*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   March 26, 2015                    518400
_____

In the Matter of DAVID M.
    KADIO,
                        Respondent,

         v                                  MEMORANDUM AND ORDER

VANESSA VOLINO, Now Known as
    VANESSA SIMONS,
                        Appellant.
_____

Calendar Date:   January 14, 2015

Before:   Peters, P.J., McCarthy, Garry and Rose, JJ.

                        _____

        Cynthia Feathers, Glens Falls, for appellant.

        Michelle Rosien, Philmont, for respondent.

        Albert F. Lawrence, Greenfield Center, attorney for the
child.

                        _____

Rose, J.

        Appeal from an order of the Family Court of Warren County
(Breen, J.), entered January 6, 2014, which granted petitioner's
application, in a proceeding pursuant to Family Ct Act article 6,
to modify a prior order of custody and visitation.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the unmarried parents of a child
(born in 2009).  The parties met while the mother was visiting
her brother, an inmate at the same correctional facility where
the father was incarcerated.  The parties dated upon the father's
release, but he was again incarcerated on a parole violation when

the child was born in December 2009.  The mother took the child to visit the father while he was in prison and, upon his release in May 2010, the father lived with the mother and child until September 2010.  The father then petitioned for visitation in October 2010, and a January 2011 consent order awarded the mother sole custody of the child with the father having unsupervised visitation on alternating weekends and a weekly midweek visitation.  Following the consent order, the parties' interactions were tumultuous, including multiple reports to the police and child protective services, various orders of protection and additional periods of incarceration for the father.  The father last exercised visitation with the child in April 2011, when the child was approximately 15 months old.  In June 2011, the father pleaded guilty to burglary in the second degree and he was sentenced to an aggregate prison term of 16 years to life.  Pursuant to an order of protection entered on consent, the father was precluded from having any contact with the child or the mother from August 2011 until August 2012.  The mother has since married and has two children with her husband, whom the child believes is his father.  The mother has promoted this misconception and has no plan to inform the child about the father.

The father commenced this proceeding in February 2013 seeking to modify the prior consent order to allow visitation with the child at the facility where he is incarcerated.  The mother opposed the application on the grounds that it would be too traumatic for the child to find out who his real father is and to visit him in a prison setting.  Following a hearing, Family Court concluded that visitation would be in the child's best interests and fashioned a schedule requiring the child to receive counseling before beginning weekly telephone contact and then monthly visits with the father.  The court ordered the mother to arrange for the transportation of the child to the father's correctional facility, which is approximately two hours from her residence, and the father was directed to pay her mileage to help defray the cost of transportation.  The mother appeals.[1]

_____

[1]  We granted the mother's motion for a stay pending appeal.

We begin our review with the well-established principle that visitation with a noncustodial parent, including an incarcerated parent, is presumed to be in the best interests of the child (see Matter of Joshua SS. v Amy RR., 112 AD3d 1159, 1160 [2013], lv denied 22 NY3d 863 [2014]; Matter of Culver v Culver, 82 AD3d 1296, 1297 [2011], lv dismissed 16 NY3d 884 [2011], lv denied 17 NY3d 710 [2011]; Matter of Chambers v Renaud, 72 AD3d 1433, 1444 [2010]). The presumption may be overcome, however, upon a showing, by a preponderance of the evidence, that visitation would be harmful to the child's welfare or not in the child's best interests (see Matter of Owens v Chamorro, 114 AD3d 1037, 1039 [2014]; Matter of Joshua SS. v Amy RR., 112 AD3d at 1160; Matter of Garraway v Laforet, 68 AD3d 1192, 1193 [2009]). "The propriety of visitation is left to the sound discretion of Family Court and its findings, guided by the best interests of the child, will not be disturbed unless they lack a sound basis in the record" (Matter of Culver v Culver, 82 AD3d at 1297 [internal quotation marks and citation omitted]; see Matter of Cole v Comfort, 63 AD3d 1234, 1235 [2009], lv denied 13 NY3d 706 [2009]; Matter of Moore v Schill, 44 AD3d 1123, 1123 [2007]).

The mother contends that Family Court improperly disregarded her concerns regarding the traumatic nature of prison visitation for the child, as well as the concerns of the psychologist she retained to evaluate the child. The attorney for the child supports her argument. However, as noted by Family Court, the mother's "strong opposition" to visitation is an insufficient basis upon which to deny the father's request (Matter of Culver v Culver, 82 AD3d at 1297 [internal quotation marks and citation omitted]), and "[w]hile the position of the attorney for the child is a factor to be considered, it is not determinative" (Porcello v Porcello, 80 AD3d 1131, 1134 [2011]). As for the psychologist, he testified that visitation would be detrimental because the child had no attachment to the father and, given his young age, would be traumatized by being told that his stepfather is not his real father. The psychologist evaluated the child solely for purposes of the litigation, however, and did not have a therapeutic relationship with him. Further, the psychologist based his opinion on his belief that the child had no contact with the father during the first six

months of his life and only minimal contact thereafter.  The father established that the mother did not provide the psychologist with an accurate history of his relationship with the child, and Family Court — crediting the father's testimony — discounted the psychologist's opinion as being based solely on the mother's version of events, without any communication with the father.  Thus, although the award of visitation is contrary to the opinion of the psychologist, Family Court acted within its discretion in reaching a conclusion based on its credibility determinations and consideration of all the evidence (see Matter of Engwer v Engwer, 307 AD2d 504, 505 [2003]; Matter of Perry v Perry, 194 AD2d 837, 838 [1993]).

Nor are we persuaded by the mother's contention that visitation should have been denied based on the length of time that has elapsed since the father made any attempt to contact the child.  The father established that he exercised visitation under the 2011 consent order but that his ability to see the child was often interrupted by claims that the mother made to child protective services that were later determined to be unfounded, as well as criminal charges initiated by the mother that were later dismissed.  The father presented testimony from his family members regarding his desire to be part of the child's life and his ability to care for the child during his visits.  The father also testified that he was afraid to send cards to the mother because he believed that she had forged a threatening letter in his name and sent it to herself, and that any communication by him would provide an opportunity for the mother to fabricate similarly offensive content and then report him to the police or child protective services.  Furthermore, although there was a lapse of time between the expiration of the most recent order of protection and the father's commencement of this proceeding, Family Court credited the father's testimony that he was waiting for the outcome of his own mother's request for visitation because she would have then been able to provide transportation for the child to see him if her petition had been successful.  Family Court also credited the father's testimony that the delay in filing his petition was based on the problems that he encountered obtaining the necessary information while incarcerated.  In short, although the mother attempts to portray the father as having only limited contact with the child, the

record supports Family Court's finding that this was due, at least in part, to the mother's efforts to thwart any contact.

While the child's young age, his lack of knowledge regarding who his real father is and the length of the father's prison sentence are factors to consider in determining whether visitation is in the child's best interests, they do not warrant a conclusion that Family Court abused its discretion in awarding visitation (see Matter of Culver v Culver, 82 AD3d at 1299). Family Court concluded that, although visitation may be difficult at first because of the child's age and lack of knowledge about his father, it is in the child's best interests to discover who his father is and address any issues that are caused by that knowledge now, as opposed to allowing the mother to perpetuate the fiction that the stepfather is the child's father until some undetermined time in the future when the child is older and becomes curious as to why he does not share his stepfather's last name. In our view, Family Court's determination that counseling, gradual contact and then visitation were in the child's best interests strikes an appropriate balance given the child's young age and the child's lack of any knowledge of the father, and we find that it is supported by a sound and substantial basis in the record (see Matter of Telfer v Pickard, 100 AD3d 1050, 1051 [2012]; Matter of Baker v Blanchard, 74 AD3d 1427, 1429 [2010]).

Nevertheless, we also find merit to the mother's contention that 12 visits per year are excessive based on the child's age, his lack of any memory of the father, the length of the father's prison sentence and the child's lack of any recent experience with visits to a correctional facility (see e.g. Matter of Granger v Misercola, 96 AD3d 1694, 1695 [2012], affd 21 NY3d 86 [2013]; Matter of Culver v Culver, 82 AD3d at 1298-1299; Matter of Moore v Schill, 44 AD3d at 1123; Matter of Ellett v Ellett, 265 AD2d 747, 748 [1999]). While such frequent visitation may be more appropriate if the father were soon to be released, it is not warranted here given the fact that the earliest the father will be released is 2027, when the child will be 18 years old. We will, therefore, remit the matter to Family Court for the fashioning of a new visitation schedule in accordance with these considerations and to commence six months from the issuance of this order (see e.g. Matter of Seeley v Seeley, 119 AD3d 1164,

1166-1167 [2014]; <u>Matter of Griffen v Evans</u>, 235 AD2d 720, 722 [1997]; <u>Matter of Garcia v Doan</u>, 132 AD2d 756, 758 [1987], <u>appeal dismissed</u> 70 NY2d 796 [1987]), but the number of visits are not to exceed four times per year until such time as there is an application for modification and the court determines that there has been a substantial change in circumstances sufficient to warrant more frequent visits. Upon remittal, Family Court may take into account the monthly reports of the counselor working with the child in order to determine the appropriate frequency of the visits. We decline to disturb the remaining aspects of Family Court's order except with respect to the timing of the events set forth therein. Inasmuch as the dates by which Family Court ordered certain events to occur have passed while the stay has been in effect, we will modify the order to the extent of establishing new dates to apply to Family Court's schedule for those events.

Peters, P.J., McCarthy and Garry, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded petitioner monthly visitation; both the attorney for the child on this appeal and respondent are required to immediately proceed with respect to the psychologists named in Family Court's order and in accordance with its terms, respondent is required to provide petitioner with the list of providers and releases for reports concerning the child within 30 days of the date of this decision, respondent is required to provide petitioner with written updates on the child's well-being commencing 30 days after the date of this decision, petitioner is permitted to send the child letters, cards and gifts commencing 90 days after the date of this decision and petitioner's telephonic communication with the child will commence 120 days after the date of this decision; matter

remitted to the Family Court of Warren County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court