*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 20, 2016                521673
_____

In the Matter of TEMER LEARY,
                    Appellant,

        v

CAMILLE MAE McGOWAN,                    MEMORANDUM AND ORDER
                    Respondent.

(And Another Related Proceeding.)
_____

Calendar Date:  September 9, 2016

Before:  McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.

                    _____

        Susan Patnode, Rural Law Center of New York, Castleton
(Cynthia Feathers of counsel), for appellant.

        Cheryl L. Sovern, Clifton Park, for respondent.

        J. Mark McQuerrey, Hoosick Falls, attorney for the child.

                    _____

Egan Jr., J.

        Appeal from an order of the Family Court of Warren County
(James, J.H.O.), entered February 20, 2015, which, in two
proceedings pursuant to Family Ct Act article 6, among other
things, dismissed petitioner's application at the close of his
case.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the unmarried parents of a son (born
in 2005).  Between November 2005 and February 2010, the father,
who previously had resided with the mother and the child, was
incarcerated at various state correctional facilities and, during

this time period, the mother periodically would bring the child to such facilities for visitations. Following the father's release, the parties again resided together until the father returned to prison in early 2013.

When the mother declined to resume prison visitations, the father commenced the first of these proceedings in May 2014 seeking visitation with his son. Following service of a pro se petition, the mother filed an amended petition in July 2014 seeking sole legal and primary physical custody of the child. In conjunction therewith, the mother also filed a family offense petition alleging that the father had committed acts that, among other things, constituted stalking in the fourth degree. In response, Family Court (Breen, J.) issued a temporary order awarding the mother sole legal and primary physical custody of the child and permitting the father to write letters to the child — subject to review by the attorney for the child.

Prior to the start of the hearing as to the custody and visitation petitions, the father, who apparently was under a preexisting order of protection in favor of the mother, consented (without making any admissions) to the imposition of a two-year stay-away order of protection in favor of the mother — said order to expire on February 13, 2017 — thereby resolving the family offense petition. As to the disposition of the instant proceedings, Family Court (James, J.H.O.), among other things, granted the mother's motions to dismiss the father's petition at the close of his case and to withdraw her custody petition and vacated all prior temporary orders issued in conjunction with the parties' respective petitions — including the temporary order permitting the father to write letters to the child. This appeal by the father ensued.

To be sure, "visitation with a noncustodial parent is presumed to be in the best interests of a child, even when that parent is incarcerated" (Matter of Joshua SS. v Amy RR., 112 AD3d 1159, 1160 [2013], lv denied 22 NY3d 863 [2014]; see Matter of Rumpel v Powell, 129 AD3d 1344, 1345 [2015]; Matter of Kadio v Volino, 126 AD3d 1253, 1254 [2015]). "The presumption may be overcome, however, upon a showing, by a preponderance of the evidence, that visitation would be harmful to the child's welfare

or not in the child's best interests" (Matter of Kadio v Volino, 126 AD3d at 1254 [citations omitted]; see Matter of Coley v Mattice, 136 AD3d 1231, 1232 [2016]).  In this regard, "[t]he propriety of visitation is left to the sound discretion of Family Court and its findings, guided by the best interests of the child, will not be disturbed unless they lack a sound [and substantial] basis in the record" (Matter of Moore v Schill, 44 AD3d 1123, 1123 [2001]; see Matter of Joshua SS. v Amy RR., 112 AD3d at 1160).

Here, although Family Court indeed misapplied the applicable burden of proof — requiring the father to demonstrate that visitation would be in the child's best interests instead of requiring the mother to rebut the presumption in favor thereof by a preponderance of the evidence (see Matter of Rogowski v Rogowski, 251 AD2d 827, 827 [1998]) — we cannot say that the court abused its discretion in denying the father's request for prison visitations.  While the precise nature and extent of the father's relationship with the child is subject to debate, there is no real question that the father had an established relationship with the child prior to the father's most recent incarceration in early 2013.  Indeed, the mother admitted that she periodically took the child to visit the father while he was incarcerated from 2005 to 2010 and that the father resided with her, her child from a prior relationship and the subject child following his release from prison in 2010.  The record further reflects that, consistent with the August 2014 temporary order of custody and visitation, the father regularly corresponded with the child from prison and that all but one of those letters was deemed to be appropriate by the attorney for the child.  That said, the record also reflects that, as of the time of the hearing, the father had been incarcerated for six of the 9½ years of the child's life and, by his own admission, was working out of town "for several weeks" at a time while he was residing with the child and the mother following his release from prison in 2010.

In addition to the foregoing, the record reveals that the father has serious anger management issues — as demonstrated by both the mother's testimony and the content of the letters that the father admittedly authored and sent to her while he was in prison.  On these points, the mother testified as to incidents

wherein the father smashed household items in the presence of the child and trashed a hotel room during a family vacation. Additionally, the record contains several letters from the father to the mother – appropriately characterized by Family Court as "disgusting" and "vicious" – wherein the father repeatedly threatened the mother's life, stating, among other things, "Stabbing you is to[o] good.  Som[e]day I will pour gas on you and light you on fire.  Maybe I will light your mother at the same time[.]  Count your days b****[.]  I will be out in 24 months."  In another letter, the father wrote, "[Y]ou can laugh now [but] you will cry later.  [Y]ou must be out of your f***ing mind to play with me . . . see you in 24 months.  I really thought you knew better[.]"  Although the father testified that he wrote such letters out of anger and frustration and had taken various courses in prison to address those issues, Family Court correctly noted that the father offered no "credible evidence" that his tendencies toward anger and violence were "successfully under control."

Finally, the mother, who would be unable to facilitate prison visits due to the outstanding order of protection, testified that the child was "bother[ed]" by prison visits with the father because he now was old enough to appreciate the significance of his father's incarceration and be impacted by the environment in which such visits would take place.  Although the father suggested that the child's paternal grandfather could provide transportation for and supervise such visits, the father admitted that the child barely knew his paternal grandfather. Notably, the paternal grandfather testified that he "never had a relationship" with the father and, as of the time of the hearing, had only met the subject child and/or spoken with the mother "three times" – all of which apparently was occasioned, in large measure, by the fact that the paternal grandfather "did 27 years in prison" and was not released until July 2011.

Upon reviewing the record as a whole, and taking into consideration the father's documented hatred of the mother, the lack of an appropriate supervisor for the child's visits with the father and the father's failure to establish that he has addressed and successfully resolved his anger issues, we cannot say that Family Court abused its considerable discretion in

denying the father's request for prison visits.  To the extent that the father now seeks to reestablish written contact with his son, that is an issue best addressed by Family Court in the first instance.  Finally, although a <u>Lincoln</u> hearing indeed is the preferred method for ascertaining a child's wishes, such a hearing is not mandatory (see <u>Matter of Merwin v Merwin</u>, 138 AD3d 1193, 1195 [2016]) — particularly where, as here, the child's wishes were otherwise communicated to the court.  The father's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

  McCarthy, J.P., Devine, Clark and Aarons, JJ., concur.

  ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court