## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered: October 27, 2016                521078
_____

In the Matter of ROBERT SS.,
                    Respondent,

        v

ASHLEY TT.,
                    Appellant.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of ASHLEY TT.,
                    Appellant,

        v

ROBERT SS.,
                    Respondent.

(Proceeding No. 2.)
_____


Calendar Date:   September 14, 2016

Before:  McCarthy, J.P., Lynch, Rose, Devine and Mulvey, JJ.

                        _____


        Wesley A. Roe, Public Defender, Watkins Glen (Frederick M.
Cerio of counsel), for appellant.

        Samuel D. Castellino, Big Flats, for respondent.

        Daniel Fitzsimmons, Watkins Glen, attorney for the
children.


                        _____

Mulvey, J.

Appeal from an order of the Family Court of Schuyler County (Morris, J.), entered April 13, 2015, which, among other things, granted petitioner's application, in Proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

Robert SS. (hereinafter the father) and Ashley TT. (hereinafter the mother) are the unmarried parents of one son (born in 2003) and one daughter (born in 2004). The parties previously lived together when the father was 22 years old and the mother was 15 years old and have had an "acrimonious" Family Court history since 2005. Pursuant to a prior order, the parties had joint legal custody of the children. As is relevant here, in March 2013, the father was convicted of rape in Steuben County and is currently serving an eight-year prison sentence. In March 2014, the father filed an enforcement petition (proceeding No. 1) claiming that the mother had willfully refused to bring the children to visit him in prison or allow them to respond to his letters. In June 2014, the mother filed a modification petition (proceeding No. 2) seeking sole legal custody of the children.[1] After fact-finding and Lincoln hearings, Family Court, among other things, granted the mother's modification petition, awarded her sole legal custody of the children, ordered that the father shall have visitation with the son four times per year while the father is in prison and dismissed the father's enforcement petition.[2] The mother now appeals.

We affirm. "'[V]isitation with a noncustodial parent, including an incarcerated parent, is presumed to be in the best interests of the child'" (Matter of Dibble v Valachovic, 141 AD3d

---

[1] Although the mother did not expressly request no visitation with the father, Family Court heard testimony from both parties with respect to visitation and, as such, visitation was at issue in these proceedings.

[2] As to the daughter, Family Court determined that visiting the father was not in her best interests at the present time.

774, 775 [2016], quoting Matter of Kadio v Volino, 126 AD3d 1253, 1254 [2015]; see Matter of Granger v Misercola, 21 NY3d 86, 90-91 [2013]). However, a parent may rebut the presumption if he or she demonstrates by a preponderance of the evidence "that[,] under all the circumstances[,] visitation would be harmful to the child's welfare" (Matter of Granger v Misercola, 21 NY3d at 91; accord Matter of Dibble v Valachovic, 141 AD3D at 775). In determining whether visiting an incarcerated parent is in a child's best interests, we consider, among other factors, the child's age, whether there is an established relationship between the parent and the child, the length of the parent's prison sentence and the distance required to travel to the prison (see Matter of Kadio v Volino, 126 AD3d at 1256; Matter of Culver v Culver, 82 AD3d 1296, 1299 [2011], lv dismissed 16 NY3d 884 [2011] and denied 17 NY3d 710 [2011]). We will disturb Family Court's visitation order only if it lacks a sound and substantial basis in the record (see Matter of Dibble v Valachovic, 141 AD3d at 775; Matter of Kadio v Volino, 126 AD3d at 1256).

The father testified that he has always had consistent contact with the son and noted that the mother brought the son to see him in jail during a prior incarceration in 2006. The father also testified that since he went to prison in March 2013, he has only seen the son three times when the father's sister brought the son to visit, and that his sister was willing to drive the son to the prison, which takes approximately 1½ hours from where the son lives. The father complained that he has written over five letters to the son but does not always receive responses, and that he has only spoken with the son on the phone once since he went to prison. The father further explained that while he is in prison, he still hopes to have a relationship with the son. The father's sister testified that she took the son to visit the father at the prison and that the son cried when the visit ended. She also stated that she "would do absolutely anything to help [the son] see [his] father" and that she could afford the transportation costs even if the mother was unwilling to help.

A social worker employed by Schuyler County Health Services testified that he previously worked with the son in an anger management group and has generally met with him once every other week and "sometimes weekly" since May 2014, and that the son has

behavioral issues, including an abusive attitude towards females. He opined that visiting the father in prison would not be in the son's best interests because it could set back his progress and might worsen his gender bias and aggression. He agreed that "continuity is what's important [but] not necessarily face to face in prison." The social worker also stated that the son's personal preference is "extremely important" and admits that the son's preference is to visit his father. He further testified that, generally, he tends to oppose prison visits and his recommendation is not based on any specific concerns about the father, whom he has never met.

The mother testified that she opposed the son visiting the father because her prior experience taking the children for jail visits "was rough" and "very difficult having them in that setting." She testified that she has no objections to the son writing letters to the father or speaking with him on the phone "so long as the conversation stayed upbeat." The mother also stated that she worries about the son, that he requires counseling for his aggression and that his behavior had improved recently.

Family Court found that the son was now old enough to have his wishes considered and that he had explained his desire to visit his father to both his therapist and to his attorney. The court also determined that the father has consistently sought to maintain his relationship with his son and that the reasons the therapist opposed visitation were not convincing, as they are not related to the behavior or actions of the father. We cannot, on the record before us, conclude that the mother has rebutted the presumption in favor of visitation by a preponderance of the evidence (see Matter of Granger v Misercola, 21 NY3d at 92; Matter of Kadio v Volino, 126 AD3d at 1257). Given the foregoing, Family Court's order with respect to the father's visitation with the son has a sound and substantial basis in the record.

McCarthy, J.P., Lynch, Rose and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court