Egan Jr., J.
Appeal from an order of the Family Court of Schenectady County (Polk, J.), entered January 7, 2016, which,among other things, granted petitioners’ application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent Tammy H. (hereinafter the mother) and respondent John H. (hereinafter the father) married in 2001, but the two became estranged shortly after their child’s birth in 2002.[1] Following a brief reconciliation in 2004, the mother and the father again separated; according to the mother, the father subsequently visited with the child on only four or five occasions and last saw the child in 2007 when she was five years old. In June 2008, the mother was awarded sole legal and physical custody of the child, and the father was awarded specified periods of visitation, which the mother contends he did not thereafter exercise.[2]
Both the mother and the father subsequently experienced various difficulties in their respective lives; the mother was laid off from work, “lost everything” and “was bouncing from place to place,” and the father, in addition to spending time in jail for violating a stay-away order of protection, reportedly “was severely mugged in a park,” causing him to sustain a “traumatic brain injury.” As a result, the mother decided — in January 2015 — to send the child to stay with petitioners[3] until she was able to “get situated.” Ultimately, the mother concluded *1193 that she lacked the resources to support the child and, in February 2015, with the mother’s consent, petitioners commenced this proceeding seeking custody of the child. Following various appearances in Family Court, the court ordered a comprehensive psychological evaluation of the parties and the child, and set this matter down for a hearing in August 2015.[4]
When the parties appeared for the scheduled hearing, they stipulated — on the record in open court — that petitioners would be awarded sole legal custody and primary physical custody of the child with such parenting time between the mother and the child as petitioners and the mother could agree. Additionally, it was agreed that both the mother and the father would have access to the child’s medical and educational records. Accordingly, the sole issue remaining for Family Court’s consideration was the extent of the father’s visitation, if any, with the child. To that end, the evaluation prepared by clinical psychologist David Horenstein was admitted into evidence on consent, and the attorney for the child called the mother as a witness. The father did not testify or otherwise present proof upon his behalf.
At the conclusion of the hearing, Family Court issued a bench decision — subsequently reduced to a written order — awarding petitioners sole legal and primary physical custody of the child and, consistent with the parties’ stipulation, granted the mother such parenting time as she and petitioners could agree, in addition to “access [to] the child’s medical and educational records upon her request.” As to the father, Family Court denied “all parenting time and contact between [the father] and the subject child” and, further, made no provision for the father’s access to the child’s medical and educational records. The father now appeals — contending that Family Court’s denial of therapeutic visitation with the child lacks a sound and substantial basis in the record and, further, that the court’s failure to provide him with access to the child’s records is contrary to the terms of the parties’ stipulation.[5]
To be sure, “[visitation with a noncustodial parent is presumed to be in a child’s best interests” (Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d 1243, 1246 [2017]; see Matter of Staff v Gelunas, 143 AD3d 1077, 1078 [2016]; Matter of Harrell v Fox, 137 AD3d 1352, 1355 *1194 [2016]). That “presumption may be overcome, however, upon a showing, by a preponderance of the evidence, that visitation would be harmful to the child’s welfare or not in the child’s best interests” (Matter of Leary v McGowan, 143 AD3d 1100, 1101 [2016] [internal quotation marks and citations omitted]; see Matter of Granger v Misercola, 21 NY3d 86, 92 [2013]; Matter of Robert SS. v Ashley TT., 143 AD3d 1193, 1193-1194 [2016]). “The propriety of visitation is a matter committed to the sound discretion of Family Court, guided by the best interests of the child, and we will not disturb its determination so long as it is supported by a sound and substantial basis in the record” (Matter of Dibble v Valachovic, 141 AD3d 774, 775 [2016] [citations omitted]; see Matter of Leary v McGowan, 143 AD3d at 1101]).
In denying the father visitation with the child, Family Court primarily relied upon the results of the psychological evaluation prepared by Horenstein. During the course of the evaluation, the father denied that he had any “psychiatric problems,” but disclosed that he did suffer from “short-term memory impairment” and “occasional seizures” — for which he had not been prescribed any medication. According to Horenstein, however, the father’s demeanor and psychological testing revealed a “profile [that] was profoundly pathological and strongly suggestive of significant psychopathology.” Specifically, while being interviewed by Horenstein, the father engaged in what was characterized as “bizarre rambling” — asserting that he was a “master mathematician” whose brain felt “like a super conducting computer” and claiming that he had participated in recorded “conversations with workers at the Pentagon.” In addition to purportedly suffering from a traumatic brain injury, the father asserted that he had sustained a bilateral hernia following an incident at “a chemical factory” wherein “his actions in grabbing [a] pipe . . . avoid [ed] án explosion and . . . saved the City of Baltimore.” Although acknowledging that the father responded to inquiries “quite appropriately in some instances,” Horenstein found that the father “manifested a significant element of gross thought disturbance,” expressed “convoluted paranoid delusional thoughts [that] were often extremely difficult to follow” and displayed “clear evidence of disordered thinking.” In conclusion, Horenstein diagnosed the father as suffering from posttraumatic stress disorder and personality disorder not otherwise specified and found “clear and rather overwhelming evidence” that the father suffered from a delusional disorder as well. As to the subject child, Horenstein concluded that, although she was “not presenting with any profound or significant psychopathology . . . , she *1195 [was] in the midst of a very difficult and demanding emotional dilemma” — prompting Horenstein to diagnose the child as suffering from an adjustment disorder with depression.
Although Horenstein was not opposed to the idea of therapeutic visitation between the father and the child, it was up to Family Court to decide whether — based upon all of the relevant circumstances — such visitation would be in the child’s best interests. To our analysis, Family Court did not abuse its considerable discretion in denying the father visitation with his child. Given the father’s well-documented and entirely untreated mental health issues, the nearly eight years that had elapsed since the father last visited with the child in 2007[6] and the child’s own struggles, we find that the presumption in favor of visitation was rebutted by a preponderance of the evidence. Accordingly, we discern no basis upon which to disturb this portion of Family Court’s order.
We do, however, find merit to the father’s claim that Family Court’s order fails to include the terms of the parties’ stipulation relative to affording the father access to the child’s medical and educational records. “Under settled law, an oral stipulation entered into by the parties in open court is binding. Such stipulations will not be disturbed in the absence of good cause such as fraud, collusion, mistake or duress” (Matter of MacNeil v Starr, 129 AD3d 1144, 1145 [2015] [internal quotation marks, brackets and citations omitted]; see Matter of Monaco v Armer, 93 AD3d 1089, 1089-1090 [2012], lv denied 19 NY3d 807 [2012]). Here, the colloquy between Family Court and the father confirms that he would “be given . . . access to [the child’s] medical . . . and other information,” which — consistent with an earlier recitation of the terms of the stipulation — included educational records. Even assuming — for the sake of argument — that a parent’s untreated mental health issues could constitute good cause for setting aside a stipulation affording such parent access to his or her child’s medical and educational records, the record here reflects that Family Court was aware of the results of Horenstein’s evaluation prior to the start of the hearing and voiced no objection to the parties’ stipulation or articulated any basis for setting aside the provision at issue. Under these circumstances, Family Court’s order *1196 should be modified to grant the father access to the applicable records (see Matter of MacNeil v Starr, 129 AD3d at 1145-1146).
McCarthy, J.P., Lynch, Devine and Clark, JJ., concur.
Ordered that the order is modified, on the law, without costs, by directing that respondent John H. shall have access to the subject child’s medical and educational records upon request from the medical and educational providers, and, as so modified, affirmed.

. The father apparently was awarded and exercised court-ordered visitation with the child between 2002 and 2004 — although the frequency and/or duration of such visitation is not reflected in the record on appeal.

. Neither the June 2008 order nor a subsequently entered August 2008 order is included in the record on appeal.

. Petitioner Wendy G. initially met the child through her work as a teaching assistant at the elementary school that the child then was attending and, in the years that followed, came to know both the child and the mother through ongoing school and church activities. The child, who was 13 years old at the commencement of this proceeding, has resided with Wendy and her husband, petitioner Robert G., since January 2015.

. As of the hearing, the mother and the father remained legally married to one another.

. Neither the sufficiency of the underlying custody petition, which was pursued with the mother’s consent, nor the award of custody to petitioners, to which all parties stipulated, is at issue on appeal.

. Although the father attempted to attribute this lengthy period of estrangement to the mother’s frequent changes in residence, the mother testified that the father came to her home in or about 2010 to encourage her to apply for certain benefits for the child and that she appeared with him in court on a child support matter in 2013. According to the mother, the father did not ask to see the child on either of these occasions.