Pandis v Lapas (2019 NY Slip Op 07267)





Pandis v Lapas


2019 NY Slip Op 07267


Decided on October 9, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 9, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
JOSEPH J. MALTESE
LINDA CHRISTOPHER, JJ.


2018-09523
 (Index No. 471/12)

[*1]Andrew Pandis, appellant, 
v
Fay Lapas, respondent.


Andrew Pandis, Floral Park, NY, appellant pro se.
Sacco & Fillas, LLP, Astoria, NY (Patricia R. Lynch of counsel), for respondent.
Law Offices of Joseph H. Nivin, P.C., Forest Hills, NY, attorney for the children.



DECISION & ORDER
In an action for divorce and ancillary relief, the plaintiff appeals from a judgment of divorce of the Supreme Court, Queens County (Elisa S. Koenderman, J.), entered June 18, 2018. The judgment of divorce, insofar as appealed from, upon an order of the same court dated November 15, 2017, made after a nonjury trial, granted the defendant sole custody of the parties' son, denied the plaintiff parental access with the parties' son, awarded the defendant maintenance in the sum of $1,750 per month for a period of six years, and directed the plaintiff to pay the sum of $3,593.75 per month in child support for the parties' two children and 69% of the children's add-on expenses, including private school tuition and college tuition.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
The parties were married in 1992. There are two children of the marriage, S.P., born in 1999, and N.P., born in 2005. The plaintiff commenced this action for divorce and ancillary relief on January 9, 2012.
In an order dated November 15, 2017, made after a nonjury trial, the Supreme Court awarded the defendant sole custody of the children, and declined to direct any parental access between the plaintiff and the children. The court found that the plaintiff, through his own actions, had alienated the defendant and the children against himself. The court further found that it was in the children's best interests to have no visitation with the plaintiff because of the plaintiff's "history of abusive behavior, his denial of responsibility for his action[s] and his lack of capacity for change." As for maintenance, the court attributed an annual income of $275,310 to the plaintiff and an annual income of $92,000 to the defendant, and directed the plaintiff to pay the defendant maintenance in the sum of $1,750 per month for six years. In terms of child support, the court set the combined parental income cap at $250,000. The court directed the plaintiff to pay child support in the sum of $3,593.75 per month, which was 69% of the basic child support for the two children. The court also directed the plaintiff to pay 69% of the children's add-on expenses, including private school tuition and college tuition.
The Supreme Court entered a judgment of divorce, upon the order, on June 18, 2018. The plaintiff appeals from the stated portions of the judgment of divorce. Because S.P. has attained the age of 18, the plaintiff challenges the provisions of the judgment of divorce related to custody [*2]and parental access only with respect to N.P.
"The court's paramount concern in any custody dispute is to determine, under the totality of the circumstances, what is in the best interests of the child" (Matter of Mejia v Llarena, 172 AD3d 720, 721; see Eschbach v Eschbach, 56 NY2d 167, 171; Cunningham v Brutman, 150 AD3d 815, 815). "In determining an initial petition for child custody, the totality of the circumstances, includes, but is not limited to, (1) which alternative will best promote stability; (2) the available home environments; (3) the past performance of each parent; (4) each parent's relative fitness, including his or her ability to guide the child, provide for the child's overall well being, and foster the child's relationship with the noncustodial parent; and (5) the child's desires'" (Matter of McPherson v McPherson, 139 AD3d 953, 954, quoting Matter of Supangkat v Torres, 101 AD3d 889, 890). "A custody determination depends to a great extent upon an assessment of the character and credibility of the parties and witnesses. Because the hearing court is able to observe witnesses and evaluate evidence firsthand, its determination is generally accorded deference on appeal and will not be disturbed unless it lacks a sound and substantial basis in the record" (Cunningham v Brutman, 150 AD3d at 815; see Matter of Monasterska v Burns, 121 AD3d 903, 903).
Furthermore, where, as here, "allegations of domestic violence are proven by a preponderance of the evidence, the court must consider the effect of such domestic violence upon the best interests of the child'" (Matter of Khaykin v Kanayeva, 47 AD3d 817, 818, quoting Domestic Relations Law § 240[1][a]; see Matter of Scott v Thompson, 166 AD3d 627, 628; Matter of Supangkat v Torres, 101 AD3d at 890).
Contrary to the plaintiff's contention, there was a sound and substantial basis in the record to award the defendant sole custody of N.P. in light of the evidence of the plaintiff's abusive behavior toward the defendant and the children, his inability to reflect on his mistakes and accept responsibility for his behavior, N.P.'s fear of the plaintiff, and the evidence that N.P. was thriving under the defendant's care. We accord deference to the Supreme Court's determination to credit the testimony of the defendant and the forensic examiner, as well as the court's determination that the plaintiff's testimony was contrived and implausible (see Cunningham v Brutman, 150 AD3d at 815).
The plaintiff contends, in effect, that the defendant alienated the children from him. "Parental alienation of a child from the [non-custodial] parent is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as a custodial parent'" (Matter of Doroski v Ashton, 99 AD3d 902, 903, quoting Entwistle v Entwistle, 61 AD2d 380, 384-385; see Matter of Vargas v Gutierrez, 155 AD3d 751, 753). Here, however, the plaintiff "failed to present sufficient evidence of parental alienation" because the record shows that the deterioration of the relationship between the plaintiff and the children was due to the plaintiff's own conduct (Matter of Sanders v Jaco, 148 AD3d 812, 813).
Contrary to the plaintiff's contention, the Supreme Court did not err in failing to order an updated forensic report. An updated forensic evaluation is not required where, as here, "the court possessed sufficient information to render an informed decision regarding custody consistent with the subject children's best interests" (Cook v Cook, 142 AD3d 530, 533; see Matter of Samuel v Sowers, 162 AD3d 674, 675; Matter of Keyes v Watson, 133 AD3d 757, 758).
There was sound and substantial evidence in the record to deny the plaintiff parental access with N.P. "Parental access is a joint right of the noncustodial parent and of the child'" (Matter of Parris v Wright, 170 AD3d 731, 731, quoting Weiss v Weiss, 52 NY2d 170, 175; see Matter of Dey v Minvielle, 154 AD3d 750, 751). "[Parental access] with a noncustodial parent is presumed to be in the best interests of the child, although the presumption may be overcome upon a showing, by a preponderance of the evidence, that [parental access] would be harmful to the child's welfare or not in the child's best interests'" (Matter of Dey v Minvielle, 154 AD3d at 751, quoting Matter of Kadio v Volino, 126 AD3d 1253, 1254). "The determination to suspend a parent's parental access is within the sound discretion of the [trial court] based upon the best interests of the child, and its determination will not be set aside unless it lacks a sound and substantial basis in the record" (Matter of Mia C. [Misael C.], 168 AD3d 836, 837; see Matter of Lupo v Rainsford, 162 AD3d 1032, 1033).
Here, there is a sound and substantial basis in the record to show that [parental access] would be harmful to N.P.'s welfare. The forensic examiner testified regarding a bizarre meeting between the plaintiff and N.P., where the plaintiff was unresponsive to N.P.'s needs, frightened him, and made attempts to alienate him from the defendant. The evidence of abuse perpetrated by the plaintiff, as well as N.P.'s fear of him, was credible.
"The amount and duration of spousal maintenance is an issue generally committed to the sound discretion of the trial court and each case is to be resolved upon its own unique facts and circumstances" (Brody v Brody, 137 AD3d 830, 831; see Carr-Harris v Carr-Harris, 98 AD3d 548, 551). "Although the trial court is required to consider the parties' pre-separation standard of living in determining the appropriate amount and duration of maintenance, the court must also consider the reasonable needs of the recipient spouse and the preseparation standard of living in the context of the other factors" (Grumet v Grumet, 37 AD3d 534, 535 [citation omitted]). "The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to be[ ] self-supporting" (D'Iorio v D'Iorio, 135 AD3d 693, 696; see Gordon v Gordon, 113 AD3d 654, 655).
As the plaintiff contends, the Supreme Court cited a version of Domestic Relations Law § 236 that was not in effect at the time the court made its determination. However, reversal is not warranted on this basis because the court enumerated and weighed the applicable factors in determining the amount and duration of the defendant's maintenance award. Furthermore, the court providently exercised its discretion by awarding the defendant $1,750 per month in maintenance for six years.
The plaintiff's contention that the Supreme Court incorrectly determined the parties' incomes for the purposes of awarding maintenance, basic child support, and add-on expenses is without merit. The plaintiff failed to introduce documentary evidence as to income and did not cross-examine the defendant regarding her testimony as to her income, and the court's determination was supported by the testimony that was presented at the trial (see generally Walker v Walker, 130 AD3d 805, 806).
Additionally, the Supreme Court did not err in setting the combined parental income cap for child support purposes at $250,000. " The [Child Support Standards Act] sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling'" (Matter of Conway v Gartmond, 162 AD3d 1013, 1015, quoting Matter of Freeman v Freeman, 71 AD3d 1143, 1144). However, where "the combined parental income exceeds the [statutory cap], the court shall determine the amount of child support for the amount of the combined parental income in excess of such dollar amount through consideration of the factors set forth in [Domestic Relations Law § 240(1-b)(f)] and/or the child support percentage" (Domestic Relations Law § 240[1-b][c][3]; see Matter of Levin v Blum, 167 AD3d 609, 611; Matter of Conway v Gartmond, 162 AD3d at 1015; Beroza v Hendler, 109 AD3d 498, 501-502). "Since the statute explicitly vests discretion in the court and [because] the exercise of discretion is subject to review . . . some record articulation of the reasons for the court's choice to apply the percentage is necessary to facilitate . . . review'" (Matter of Levin v Blum, 167 AD3d at 611, quoting Matter of Cassano v Cassano, 85 NY2d 649, 655; see Gillman v Gillman, 139 AD3d 667, 669). "The test generally applied is whether the child is receiving enough to meet his or her actual needs and the amount required . . . to live an appropriate lifestyle'" (Matter of Keith v Lawrence, 113 AD3d 615, 616, quoting Levesque v Levesque, 73 AD3d 990, 990; see Matter of Parsick v Rubio, 103 AD3d 898, 900). Here, the court applied the relevant factors set forth in Domestic Relations Law § 240(1-b)(f) and sufficiently articulated its reasons for determining that the combined parental income should be set at $250,000, including the parties' substantially disparate incomes and the standard of living the children would have enjoyed had the marriage continued.
Contrary to the plaintiff's contention, there is no basis in the record to apply a SUNY cap here, where the children attended private schools during the marriage (see Berliner v Berliner, 33 AD3d 745, 748). " Whether to impose a SUNY cap is determined on a case-by-case basis, considering the parties' means and the child[ren]'s educational needs'" (Walker v Walker, 130 AD3d at 806, quoting Tishman v Bogatin, 94 AD3d 621, 622).
The defendant's remaining contentions are without merit.
Accordingly, we affirm the judgment of divorce insofar as appealed from.
DILLON, J.P., LEVENTHAL, MALTESE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court