Matter of Todd EE. v Elina FF.

2026 NY Slip Op 02178

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Todd EE., Appellant,

v

Elina FF., Respondent. (And Another Related Proceeding.)

Decided and Entered:April 9, 2026

CV-24-1439

Calendar Date: February 19, 2026

Before: Garry, P.J., Clark, Pritzker, Mcshan And Corcoran, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for appellant.

Michelle I. Rosien, Philmont, for respondent.

Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.

[*1]

Garry, P.J.

Appeals from two orders of the Family Court of Fulton County (J. Gerard McAuliffe Jr., J.), entered August 7, 2024, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2014). In 2021, the father pleaded guilty to rape in the first degree for his sexual activity with an 11-year-old relative and was sentenced to 12 years in prison, to be followed by 20 years of postrelease supervision. Following his conviction, the parties consented to the mother having sole custody of the child and the father having one monthly supervised telephone call with him, to be overseen by the child's stepfather, as well as the ability to correspond with the child through letters, cards and gifts. The father also agreed to complete a variety of treatment programs and evaluations prior to seeking any modification of the consent order.

In May 2023, the father filed a modification petition, asserting, among other things, that the contemplated treatment was unavailable to him in prison or would not be available to him until closer to his release date, after the child would reach the age of majority, and seeking in-person visitation and increased telephonic access to the child.FN1 Following a fact-finding hearing and a Lincoln hearing, Family Court partially granted the father's modification petition, crediting the father's unrefuted testimony that the conditions in the prior order were largely impossible for him to fulfill and granting the father two in-person visits per year at his current correctional facility or such other facility within 100 miles of the mother's residence, with transportation to be provided by the paternal grandmother. The court also increased the father's monthly telephone call from 15 to 30 minutes and provided that three calls annually could be converted to video calls if offered at the facility where the father was incarcerated. The father appeals, seeking additional in-person visits with the child and further increased telephonic access.

Family Court's change in circumstances finding is not in dispute, and the inquiry accordingly turns to whether the court's visitation arrangement is in the child's best interests (see Matter of Gabrielle Q. v James R., 233 AD3d 1407, 1408 [3d Dept 2024]; Matter of Giuseppe V. v Tiffany U., 224 AD3d 1122, 1123 [3d Dept 2024]). We begin with the premise that a meaningful relationship with both parents is presumed to be in a child's best interests, even when one of those parents is incarcerated (see Matter of Granger v Misercola, 21 NY3d 86, 91 [2013]; Matter of Joenathan E. v Jennifer F., 242 AD3d 1339, 1340 [3d Dept 2025]). Visitation, however, is not limited to in-person contact at the prison, and meaningful access to a child can involve phone and video calls and other correspondence (see[*2]Matter of Jaime T. v Ryan U., 238 AD3d 1257, 1259 [3d Dept 2025]; Matter of Benjamin OO. v Latasha OO., 170 AD3d 1394, 1396 [3d Dept 2019], lv denied 33 NY3d 909 [2019]; Matter of Ruple v Harkenreader, 99 AD3d 1085, 1086 [3d Dept 2012]). Relevant factors in this context include the nature of the parent-child relationship before incarceration, the age of the child, the transportation burden that the visits would place on the custodial parent and/or the child, the child's wishes if of sufficient age and maturity, the nature of the relevant crime and the length of the remaining incarceration (see Matter of Gary JJ. v Barbara KK., 244 AD3d 1620, 1622 [3d Dept 2025]; Matter of Angelina H. v Derrick I., 187 AD3d 1357, 1358 [3d Dept 2020]; Matter of Garraway v Laforet, 68 AD3d 1192, 1194 [3d Dept 2009]). Ultimately, both the frequency and form of visitation are matters entrusted to the sound discretion of Family Court, and this Court will not disturb that discretionary determination if it is supported by a sound and substantial basis in the record (see Matter of Joenathan E. v Jennifer F., 242 AD3d at 1340-1341; see Matter of Benjamin OO. v Latasha OO., 170 AD3d at 1395).

The hearing evidence, which consisted only of testimony from the father and the paternal grandmother, established that the father had not seen the subject child in the four years preceding the hearing. However, the father had stayed home with the child for the first couple years of the child's life, and, as the child's primary caregiver, the two had a close relationship during that time. During his current monthly call with the father, the child referred to him as "dad," but the father was aware that the child otherwise referred to him by his first name. The paternal grandmother, who then had visitation with the child one weekend per month, testified that she would be willing to transport the child to the prison, approximately 45 minutes from her residence, and pay for the associated costs of visitation. In view of the extended period of nonvisitation, the length of the father's incarceration, and the nature of his crime, and upon our review of the Lincoln hearing transcript, we find the frequency of visitation provided for by Family Court to be supported by a sound and substantial basis in the record (see Matter of Culver v Culver, 82 AD3d 1296, 1296-1299 [3d Dept 2011], appeal dismissed 16 NY3d 884 [2011], lv denied 17 NY3d 710 [2011]; see also Matter of Benjamin OO. v Latasha OO., 170 AD3d at 1394-1397; Matter of Lapham v Senecal, 125 AD3d 1210, 1211 [3d Dept 2015]; see generally Matter of Kadio v Volino, 126 AD3d 1253, 1256-1257 [3d Dept 2015]; Matter of Carmen L., 37 AD3d 468, 469 [2d Dept 2007], lvs denied 8 NY3d 814 [2007]).FN2 We similarly discern no basis upon which to disturb Family Court's parameters on telephonic contact. The father's remaining contentions, to the extent properly before us, have been evaluated and determined to be without merit.FN3

Clark, Pritzker, McShan and [*3]Corcoran, JJ., concur.

ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: The father also filed a petition to enforce the same order, which was dismissed and is not at issue on this appeal.

Footnote 2: Although not dispositive, we also note that the attorney for the child supports the arrangement fashioned by Family Court (seeMatter of Joenathan E. v Jennifer F., 242 AD3d at 1340 n 3).

Footnote 3: To the extent that the father suggests that his current facility is outside of the geographic range articulated by Family Court, that claim may be the proper subject of a new modification petition (see Matter of Granger v Misercola, 21 NY3d at 92; Matter of Lapham v Senecal, 125 AD3d at 1211; Matter of Moore v Schill, 44 AD3d 1123, 1123 [3d Dept 2007]).