[990 NE2d 110, 967 NYS2d 872]

In the Matter of Shawn G. Granger, Respondent, v Danielle D. Misercola, Appellant.

Argued March 20, 2013; decided April 30, 2013

## POINTS OF COUNSEL

*Davison Law Office PLLC*, Canandaigua (*Mary P. Davison* of counsel), for appellant. I. The lower courts employed an incorrect standard in reviewing the merits of the petition. (*Finlay v Finlay*, 240 NY 429; *Matter of Alison D. v Virginia M.*, 77 NY2d 651; *Martin v Martin*, 45 NY2d 739; *Braiman v Braiman*, 44 NY2d 584; *Obey v Degling*, 37 NY2d 768; *Matter of Bachman v Mejias*, 1 NY2d 575; *Eschbach v Eschbach*, 56 NY2d 167; *Friederwitzer v Friederwitzer*, 55 NY2d 89; *Daghir v Daghir*, 56 NY2d 938; *Weiss v Weiss*, 52 NY2d 170.) II. The record lacks a sound and substantial basis to support the Family Court's determination that prison visitation would be in the child's best

interests. (*Sitts v Sitts*, 74 AD3d 1722, 18 NY3d 801; *Fox v Fox*, 177 AD2d 209; *Matter of Vincent L.*, 46 AD3d 395; *Matter of Cole v Comfort*, 63 AD3d 1234; *Matter of Donald C. v Michelle T.*, 254 AD2d 124; *Matter of Smith v Smith*, 92 AD3d 791; *Matter of Goldsmith v Goldsmith*, 68 AD3d 1209; *Matter of Lonobile v Betkowski*, 295 AD2d 994; *Matter of Ruple v Harkenreader*, 99 AD3d 1085; *Matter of Butler v Ewers*, 78 AD3d 1667.) III. The intermediate appellate court erred in failing to consider the impact of petitioner's change in location on the child's best interests. (*Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946; *Matter of Moore v Schill*, 44 AD3d 1123; *Matter of Michael B.*, 80 NY2d 299; *Affronti v Crosson*, 95 NY2d 713; *Matter of Shaida W.*, 85 NY2d 453; *Williams v Brown*, 53 App Div 486; *Dorr v Esders*, 112 App Div 896; *Matter of Ruple v Harkenreader*, 99 AD3d 1085; *Matter of Fewell v Ratzel*, 99 AD3d 1237; *Matter of Steven M. v Meghan M.*, 43 AD3d 1349.)

*Charles J. Greenberg*, Amherst, for respondent. I. The Jefferson County Family Court and the Appellate Division employed the correct standard in reviewing the merits of the petition. (*Weiss v Weiss*, 52 NY2d 170; *Matter of Thomas v Thomas*, 277 AD2d 935; *Matter of Davis v Davis*, 232 AD2d 773.) II. There is a sound or substantial basis in the record to support the Family Court's determination that prison visitation would be in the child's best interest. (*Matter of Moore v Schill*, 44 AD3d 1123; *Matter of McCullough v Brown*, 21 AD3d 1349; *Matter of Rogowski v Rogowski*, 251 AD2d 827; *Matter of Hadsell v Hadsell*, 249 AD2d 853.) III. The Appellate Division did not err by failing to consider the impact of the petitioner's change in location on the child's best interests. (*Matter of Michael B.*, 80 NY2d 299; *Matter of Moore v Schill*, 44 AD3d 1123.)

*Koffs Law Firm*, Chaumont (*Melissa L. Koffs* of counsel), Attorney for the Child. I. The lower courts erred in determining it was in the child's best interest to visit the father at prison and used the wrong test in making that determination. (*Friederwitzer v Friederwitzer*, 55 NY2d 89; *Eschbach v Eschbach*, 56 NY2d 167; *Daghir v Daghir*, 82 AD2d 191; *Matter of Gloria S. v Richard B.*, 80 AD2d 72.) II. The trial court did not have a sound and substantial basis to determine that it was in the child's best interests to visit petitioner father while he was incarcerated. (*Matter of Morales v Bruno*, 29 AD3d 1001; *Matter of Wispe v Leandry*, 63 AD3d 853; *Sitts v Sitts*, 74 AD3d 1722; *Fox v Fox*, 177 AD2d 209; *Eschbach v Eschbach*, 56 NY2d 167; *Matter of Cardona v Vantassel*, 96 AD3d 1052; *Matter of Flood v*

*Flood,* 63 AD3d 1197; *Matter of Tanner v Tanner,* 35 AD3d 1102; *Matter of Garraway v Laforet,* 68 AD3d 1192; *Matter of Eck v Eck,* 33 AD3d 1082.) III. The intermediate appellate court should have reviewed the lower courts' lack of setting an appropriate distance for the child to travel to see his father. (*Matter of Michael B.,* 80 NY2d 299.)

### OPINION OF THE COURT

PIGOTT, J.

Petitioner, an inmate in New York's correctional system, who had acknowledged paternity of a child prior to his imprisonment, commenced this Family Court Act proceeding seeking visitation with the child after respondent mother refused to bring the child to the prison. Following a fact-finding hearing, Family Court granted the petition, awarding petitioner periodic four-hour visits at the prison with the child, who was then three years old.

Family Court noted that "the law in New York presumes visitation with a non-custodial parent to be in the child's best interest and the fact that such parent is incarcerated is not an automatic reason for blocking visitation." The court found that petitioner had "demonstrated that he was involved in a meaningful way in the child's life prior to his incarceration and seeks to maintain a relationship." It further found that the child was old enough to travel to and from the prison by car without harm, and would "benefit from the visitation with his father." The court considered the length of petitioner's sentence and reasoned that "[l]osing contact for such a long period is felt to be detrimental to an established relationship." The court concluded that visitation with petitioner would be in the child's best interests.

The Appellate Division affirmed Family Court's order, finding "a sound and substantial basis in the record to support the court's determination to grant the father visitation with the child in accordance with the schedule set forth in the order" (96 AD3d 1694, 1695 [4th Dept 2012]). The Appellate Division deferred to Family Court's ability to assess directly the parties' character and credibility, noting that petitioner had "attempted to maintain a relationship with the child over the telephone and by sending letters, cards, and gifts. . . . [T]he father made, and continues to make, efforts to establish a relationship with the child, and it cannot be said that he is 'a stranger to the child'" (*id.,* quoting *Matter of Culver v Culver,* 82 AD3d 1296, 1299 [3d Dept 2011]).

While his appeal was pending, petitioner had been moved to a different correctional facility, further from respondent's home. The Appellate Division made no finding of fact in this regard, ruling that any such change in circumstance was more appropriately the subject of a modification petition (*id.*).

Respondent's primary contention is that the lower courts employed an incorrect legal standard in reviewing the petition for visitation. We granted respondent leave to appeal, and now affirm.

In *Weiss v Weiss* (52 NY2d 170 [1981]), we held that "in initially prescribing or approving custodial arrangements, absent exceptional circumstances, such as those in which it would be inimical to the welfare of the child or where a parent in some manner has forfeited his or her right to such access, appropriate provision for visitation or other access by the noncustodial parent follows almost as a matter of course" (*id.* at 175 [citation omitted]). Subsequent Appellate Division decisions have frequently referred to a rebuttable presumption that, in initial custodial arrangements, a noncustodial parent will be granted visitation. "[I]t is presumed that parental visitation is in the best interest of the child in the absence of proof that it will be harmful" (*Matter of Nathaniel T.*, 97 AD2d 973, 974 [4th Dept 1983]) or proof that the noncustodial parent has forfeited the right to visitation. In the present case, Family Court similarly noted that New York law "presumes visitation with a non-custodial parent to be in the child's best interest."

Respondent contends that this presumption is contrary to this Court's holding in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]), in which we wrote that, where a custodial parent seeks judicial approval of a relocation plan that would hinder visitation by the noncustodial parent, "presumptions and threshold tests that artificially skew the analysis in favor of one outcome or another" must be rejected (*id.* at 740). However, in *Tropea*, we did not reject an initial presumption in favor of visitation, but rather a "mechanical, tiered analysis that prevents or interferes with a simultaneous weighing and comparative analysis of all of the relevant facts and circumstances" involved in deciding a relocation case (*id.* at 738). Our holding was not that presumptions can never be relied upon, but that "each relocation request must be considered on its own merits . . . and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (*id.* at 739). A rebuttable presumption that a noncustodial parent will be granted

visitation is an appropriate starting point in any initial determination regarding custody and/or visitation.

■ Moreover, the rebuttable presumption in favor of visitation applies when the parent seeking visitation is incarcerated. A parent who is in prison does not forfeit his or her visitation rights by being incarcerated. "[P]etitioner's incarceration, standing alone, does not make a visitation order inappropriate," but a demonstration "that such visitation would be harmful to the child will justify denying such a request" (*Matter of Mohammed v Cortland County Dept. of Social Servs.*, 186 AD2d 908, 908 [3d Dept 1992], *lv denied* 81 NY2d 706 [1993]; *see also e.g. Matter of Morales v Bruno*, 29 AD3d 1001 [2d Dept 2006]; *Matter of Thomas v Thomas*, 277 AD2d 935 [4th Dept 2000]; *Matter of Davis v Davis*, 232 AD2d 773 [3d Dept 1996]). Such a presumption is consistent with *Tropea* because it does not give the noncustodial parent's rights "such disproportionate weight as to predetermine the outcome" (*id.* at 738) or "bar[ ] further inquiry into the salient 'best interests' question" (*id.* at 741). In deciding whether the presumption is rebutted, the possibility that a visit to an incarcerated parent would be harmful to the child must be considered, together with other relevant facts. Visitation should be denied where it is demonstrated that under all the circumstances visitation would be harmful to the child's welfare, or that the right to visitation has been forfeited.

■ In speaking of the manner in which the presumption of visitation may be rebutted, the Appellate Division has frequently used the terms "substantial proof" and "substantial evidence." "[T]he sweeping denial of the right of the father to visit or see the child is a drastic decision that should be based upon substantial evidence" (*Herb v Herb*, 8 AD2d 419, 422 [4th Dept 1959]). This language is intended to convey to lower courts and practitioners that visitation will be denied only upon a demonstration—that visitation would be harmful to the child—that proceeds by means of sworn testimony or documentary evidence. Thus, the arguments of the party contesting visitation did not amount to "substantial proof" when that party did not attempt to contradict expert testimony favoring visitation (*see Matter of Hughes v Wiegman*, 150 AD2d 449, 450 [2d Dept 1989]), when sworn testimony and documentary evidence were entirely missing from the proceeding (*see e.g. Matter of Folsom v Folsom*, 262 AD2d 875, 876 [3d Dept 1999]; *Matter of Thomas v Thomas*, 277 AD2d 935 [4th Dept 2000]), or when the trial court's decision was based on a secret report, without benefit of the parties'

responses (*see Herb v Herb*). The "substantial proof" language should not be interpreted in such a way as to heighten the burden, of the party who opposes visitation, to rebut the presumption of visitation. The presumption in favor of visitation may be rebutted through demonstration by a *preponderance of the evidence* (*see generally Tropea*, 87 NY2d at 741).

■ Here, the lower courts used the appropriate legal standard, applying the presumption in favor of visitation and considering whether respondent rebutted the presumption through showing, by a preponderance of the evidence, that visitation would be harmful to the child.

■ Respondent's second challenge is that there is no "sound and substantial basis in the testimony" (*Bunim v Bunim*, 298 NY 391, 393 [1949]) for finding that visitation was in the child's best interests. However, the factual findings underpinning the lower courts' best interests determinations in this case—that travel to and from the prison would not harm the child and that petitioner sought to maintain a relationship with the child—constitute affirmed findings of fact that we lack the "power to review . . . if . . . supported by evidence in the record" (*Humphrey v State of New York*, 60 NY2d 742, 743 [1983]; *see e.g. Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326 [2006]). Here, there is support in the record for the finding that the travel would not be harmful to the welfare of the child, and that petitioner made efforts to establish a meaningful relationship with the child.

■ Finally, respondent contends that the Appellate Division erred in failing to consider the impact of petitioner's move from one prison to another. The Appellate Division correctly ruled that the question of petitioner's move from one prison to another should have been brought to the attention of Family Court, by means of a modification petition. That issue should not have been raised in the first instance for determination by an appellate court (*see Matter of Moore v Schill*, 44 AD3d 1123 [2007]; *see generally Matter of Michael B.*, 80 NY2d 299, 318 [1992]).

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur.

Order affirmed, without costs.