OPINION OF THE COURT
Judith D. Waksberg, J.
Petitioner mother and respondent father were married in Yemen. They subsequently moved to New York where their two children were born. In 2011, both parents and their children returned to Yemen. What happened there is in dispute. Both parties agree that they were divorced in Yemen. The mother claims that the father agreed that she would have custody of both children at that time. She also claims that the father subsequently removed the children from her. The father claims that pursuant to the divorce decree agreed upon by both parties, he was to have custody of the children. The two children have resided in Yemen since 2011 and are currently being cared for by the respondent father’s new wife. Both the mother and the father are residing in Brooklyn at present although the father contends that his presence here is only for medical purposes.
The father initially moved to dismiss the mother’s petition on the ground that the court did not have jurisdiction over the matter. He claimed that he was not a resident of New York and that he only came here to receive medical care. In an order dated March 1, 2016, this court held that the issue of whether the father was a New York resident would be determined at a hearing, and that if he was in fact a New York resident, the court could exercise subject matter jurisdiction over the custody dispute between them. (See People ex rel. Satti v Satti, 43 NY2d 671 [1977], affg 55 AD2d 149 [1st Dept 1976] [where both parents resided in New York, court had jurisdiction over custody matter between the parents even though the children were residing in Pakistan]; Matter of Nusrat C. v Muhammad R., 67 AD3d 419, 419 [1st Dept 2009] [court has subject matter jurisdiction because “even though the child lives abroad, both parents live here and are personally before the court”].) A hearing on the father’s residency commenced. Before it was completed, the father stated that he wished to concede that the court had jurisdiction over the custody matter.
*1089 After conceding jurisdiction, the father has moved for an order returning his passport to him and permitting him to travel to Yemen. (The father’s passport was ordered to be held by the court pending the outcome of the hearing on his New York residency.) In his motion, the father states that his presence in New York was due primarily to medical issues that have since been taken care of. He now wants to return to Yemen to be with his family whom he has not seen for 16 months. Last November, his wife in Yemen gave birth to twins that he has not yet seen. He has a 20-year-old daughter who plans to marry soon and he says that he must be present for the wedding. The father states that he “give[s his] word” that he will return for the scheduled fact-finding hearing in April 2017.
The mother has filed papers strenuously opposing the father being permitted to return to Yemen. The mother has also moved, by order to show cause, for the issuance of a writ of habeas corpus directing that the children be produced in court. In her papers, the mother contends that the father “is not just a flight risk, but a flight guarantee.” According to the mother, United States citizenship has become “an extremely valuable commodity” in Yemen society and dowries for marriage with a U.S. citizen, which are paid to the bride’s father, may reach as high as $25,000 to $50,000. As the father has five daughters with American citizenship, he will be in a position to receive a great deal of money by arranging marriages for his daughters, with perhaps very little incentive to return to the United States.
The mother also contends that the father has severely limited her access to her two daughters and has not been forthcoming with information as to their location. She states that although the father stated in court that the children were in Taiz, when she spoke to the girls subsequently, they indicated that they were in fact in Sana’a. She also states that she has had difficulty reaching the girls to speak with them, and when she does, she says that she hears adult voices in the background, disparaging her. Even more importantly from the mother’s perspective is that a war and bloody conflict are raging now in Yemen. Due to the armed conflict, she states that the children are unable to attend school regularly and she fears for their safety.
Given that the father has now conceded that New York Family Court has jurisdiction over this custody dispute, the court must act in the best interests of the children. “Any court in considering questions of child custody must make every effort *1090 to determine ‘what is for the best interest of the child, and what will best promote its welfare and happiness’ ” (Eschbach v Eschbach, 56 NY2d 167, 171 [1982] [citations omitted]). The mother disputes the father’s claim that the Yemen judgment of divorce granted him custody of the children, but even assuming, arguendo, that the father was granted custody of the children in Yemen, his custody does not extinguish the mother’s parental rights. Maintaining the relationship of the noncustodial parent with her children through visitation is presumed to be in the best interests of the children. (See Matter of Granger v Misercola, 21 NY3d 86, 90-91 [2013] [“A rebut-table presumption that a noncustodial parent will be granted visitation is an appropriate starting point in any initial determination regarding custody and/or visitation”]; Matter of Schack v Schack, 98 AD2d 802, 802 [2d Dept 1983] [“Visitation is a joint right of the noncustodial parent and of the child”], quoting Weiss v Weiss, 52 NY2d 170, 175 [1981].) As the Second Department noted in Schack, “Absent extraordinary circumstances, where visitation would be detrimental to the child’s well-being, a noncustodial parent has a right to reasonable access and visitation. . . . It is generally in the best interest of the child for a rapport to be established with the noncustodial parent” (98 AD2d at 802 [citations omitted].)
The mother and the children have not seen each other since February 2015, more than a year and a half ago. Particularly in light of the tender age of these children, five and eight years old, it is important that they have the opportunity to spend a substantial amount of time with their mother. The court is therefore finding that it is in the best interests of these children to have an extended visit with their mother in the United States.* The mother’s writ of habeas corpus is therefore granted. The father is directed to produce the children in New York for an extended visit with their mother pending the outcome of the trial in April. The father’s motion for the return of his passport and permission to return to Yemen until the trial in April will be granted once the order to produce the children in New York has been complied with.

 Producing the children to New York will also have the added benefit of providing an opportunity for an attorney for the children to be assigned and to have the children’s position considered in this custody dispute — something that would not be feasible while the children remain in Yemen.