■ In the Matter of RONALD C., Appellant, v SHERRY B., Respondent. [42 NYS3d 2]—

Order, Family Court, New York County (Monica Shulman, Ref.), entered on or about October 27, 2015, which, to the extent appealed from as limited by the briefs, denied petitioner father's petition for an order of visitation with his twin daughters, unanimously reversed, on the facts and in the exercise of discretion, without costs, and the matter remanded to Family Court for further proceedings for the purpose of fixing reasonable rights of visitation consistent herewith.

After having carefully reviewed the record, including the in camera testimony of the children, the testimony of the parents and the forensic social worker's reports, we find that the court improvidently exercised its discretion when it found that visitation with petitioner is not in the best interests of the children and that petitioner forfeited his right to visitation with them. At a minimum, the court should have considered reinstating the therapeutic supervised visitation that had proved successful, rather than terminating all visitation.

Petitioner is the father of 13-year-old twin daughters, born in 2003. Although the twins lived with respondent mother on a different floor in the same apartment building as he did, petitioner did not cultivate a relationship with them.

In 2005, petitioner began paying child support for the twins pursuant to a court order. In 2006, he filed his first petition for visitation. However, after several adjournments, the petition was dismissed, without prejudice, because petitioner was unable to locate and serve respondent, who had moved from the building without giving him her forwarding address.

Over the next seven years, petitioner did not see the twins. In February 2013, when the twins were 10, he petitioned for visitation for a second time. After respondent was located by an investigator hired by petitioner's attorney, she cross-petitioned for custody.

Initially, the court directed petitioner to contact the twins by letter. After some confusion as to the procedure he was to follow, petitioner wrote many letters to the twins, which the attorney for the children characterized as "very appropriate."

By orders dated October 28, 2014 and January 28, 2015, the court ordered therapeutic visitation supervised by a forensic social worker. A May 2015 report by the social worker indicated that while the children continued to be ambivalent about see-

ing petitioner and allowing him into their lives, they were opening up more to him and becoming more talkative and receptive.

By order dated May 4, 2015, the court ordered unsupervised visitation. At the next court appearance on June 23, 2015, the attorney for the children made an application to suspend visitation, asserting that the twins found the visits stressful. While continuing the unsupervised visitation, the court agreed to an in camera interview with the twins and adjourned the matter for a hearing on custody and visitation.

After conducting the hearing, which included the children's in camera testimony, on October 27, 2015, the court held that it is not in the children's best interest to be compelled to have visitation with petitioner and that he had forfeited his right to visitation. Giving "substantial weight" to the twins' strong opposition to being forced to visit with petitioner, the court found, inter alia, that as a result of petitioner's absence from their lives, for which petitioner alone was responsible, "these children believe this man to be a stranger to them . . . . [W]hile not physically unsafe in his care, they are emotionally harmed by continuing to force a relationship [with him] just because he has now determined it is time to do so . . . causing them to feel unhappy and depressed." Thus, while recognizing that "at some point these girls may decide that they wish to get to know their father," the court concluded that "any attempt at visitation should now be on their terms."

The determination as to whether or not a court should award visitation to a noncustodial parent lies within the sound discretion of the trial court, and must be based upon the best interests of the child (see Matter of David V. v Rosalind W., 62 AD3d 717 [2d Dept 2009]). Generally, a child's best interest lies in being nurtured by both parents (Matter of Rought v Palidar, 6 AD3d 1112 [4th Dept 2004]) and a noncustodial parent should have reasonable rights of visitation unless there is substantial evidence that visitation would be detrimental to the welfare of the child (see Weiss v Weiss, 52 NY2d 170, 174-175 [1981]; Matter of Nathaniel T., 97 AD2d 973, 974 [4th Dept 1983]). Thus, there is a rebuttable presumption that visitation by a noncustodial parent is in the child's best interest and should be denied only in exceptional circumstances (see Matter of Granger v Misercola, 21 NY3d 86, 90-91 [2013]).

Here, the presumption that petitioner and the twins should visit with each other was not rebutted and the court should not have terminated all visitation. As the court acknowledged, visitation with petitioner did not place the children in any

physical danger and there is no substantial evidence that visitation would harm the twins by producing serious emotional strain or disturbance. Nor are there exceptional circumstances to support a finding that petitioner, despite his current efforts to foster a relationship with the twins, forfeited his right to visitation.

The record establishes that petitioner's name is on the twins' birth certificates, that he signed an acknowledgment of paternity and that he gave them his surname. Although he did not establish a relationship with them, he supported the twins financially for 10 years and his initial effort to obtain visitation when they were three years old was frustrated by his inability to locate respondent. The record further establishes that petitioner has remarried and matured and that he wants to establish a relationship with the twins, and for them to establish relationships with their half siblings.

When supervised visits were ordered, petitioner did not miss a visit. Although the court stated that there was a "clear disconnect" between petitioner and the twins and that "visits were often difficult to get through," the forensic social worker supported visitation and reported that petitioner was attentive and loving during the visits and "appears interested in learning about [the twins]," who "appear[ed] to be opening up to him . . . they are more talkative and receptive to him . . . ." During the unsupervised visits, petitioner brought the twins to the park to play with their friends. While the court criticized petitioner for not interacting more with the twins on these visits, petitioner explained that he did not want to push them too much and went along with what they wanted to do.

The court placed too much weight on the expressed wishes of the twins, which are not determinative (*see Matter of Anthony C. v Kristine Z.*, 38 AD3d 1317 [4th Dept 2007]). This is so because of "the foreseeable changes that occur in children as they mature [and their] periodic reorientations toward one or another parent" (*Dintruff v McGreevy*, 34 NY2d 887, 888 [1974]). Although the twins told the court that they did not want visits with their father, there was no substantial evidence to support the conclusion that they would be harmed by visits (*see Matter of Crowell v Livziey*, 20 AD3d 923 [4th Dept 2005]). While the twins each raised matters of legitimate concern during their respective in camera interviews concerning their interactions with petitioner, which we have carefully reviewed and taken into account, they were insufficient reasons to terminate petitioner's visitation rights (*see Matter of Mc-Cauliffe v Peace*, 176 AD2d 382, 383-384 [3d Dept 1991]). At

most they bespeak the need for more therapeutic support and perhaps more time to try to help petitioner gain the children's trust and affection.

The court's reliance on *Matter of Heyer v Heyer* (112 AD2d 539 [3d Dept 1985]) is misplaced. In *Heyer*, a finding that the father had forfeited his rights was supported by testimony that he would appear for visits drunk, that the children were afraid of him and that he required psychiatric counseling. Here, petitioner demonstrated that he financially supported the twins for over 10 years, that he filed two petitions seeking visitation, that he abided by court orders, and that he participated in therapeutic visitation with positive results. He also accommodated respondent's busy schedule by visiting the twins in their neighborhood. While we do not condone petitioner's failure to have contact with his children for a long period of time, we do not believe, under the facts of this case, that his behavior amounts to a forfeiture of his rights. Concur—Mazzarelli, J.P., Andrias, Saxe, Feinman and Gische, JJ.