McCarthy, J.
Appeal from an order of the Family Court of *1247 Madison County (McDermott, J.), entered September 22, 2015, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of one child (born in 2012). In 2014, the mother and the father stipulated to a Family Court order that granted the parties joint custody, gave the mother primary residential custody and gave the father visitation for one hour per month so long as he remained incarcerated within 40 miles of the mother’s home, and also directed that he receive a picture of the child every six months as long as he was incarcerated. Subsequently, while incarcerated, the father pleaded guilty to criminal contempt in the first degree for violating an order of protection against him in favor of the mother. The father is currently incarcerated at the Collins Correctional Facility located in the Town of Collins, Erie County, and the mother lives in Oneida County, making the distance between the father and the mother’s home more than a three-hour car trip, one-way.
In March 2014, the mother filed a petition to modify custody and visitation, in which she sought sole custody of the child and termination of the father’s visitation due to the threatening letters he had written to her and the child. In May 2014 and January 2015, the father filed petitions alleging that the mother had violated a court order by refusing to bring the child to visit him while he is incarcerated.[1] Following a hearing, Family Court dismissed the father’s petitions, granted the mother’s petition for sole custody and ordered that no provision be made for the father to have contact with the child. The father now appeals, and we affirm.
The father’s sole contention on appeal, that Family Court erred in not granting him contact with the child in the form of calls/communication monitored by a third party other than the mother, is without merit.[2] “Visitation with a noncustodial parent, including an incarcerated parent, is presumed to be in the best interests of the child” (Matter of Robert SS. v Ashley TT., 143 AD3d 1193, 1193 [2016] [internal quotation marks, brackets and citations omitted]; see Matter of Granger v Miser *1248 cola, 21 NY3d 86, 90-91 [2013]). “To rebut this presumption, it must be demonstrated, by a preponderance of the evidence, that visitation with the incarcerated parent would, upon consideration of all the circumstances, be harmful to the child’s welfare or contrary to the child’s best interests” (Matter of Samuels v Samuels, 144 AD3d 1415, 1415 [2016] [internal quotation marks and citations omitted]; see Matter of Granger v Misercola, 21 NY3d at 91-92). “The propriety of visitation is a matter committed to the sound discretion of Family Court, guided by the best interests of the child, and [this Court] will not disturb its determination so long as it is supported by a sound and substantial basis in the record” (Matter of Dibble v Valachovic, 141 AD3d 774, 775 [2016] [citations omitted]; see Matter of Williams v Patinka, 144 AD3d 1432, 1433-1434 [2016]).
Evidence established that the father had used his correspondence with the child, who was not yet able to read, to correspond with and threaten the mother — who was ostensibly tasked with reading the letters to the child. A review of the letters in evidence and the mother’s testimony related thereto establish that the letters consisted primarily of content that was directed at the mother that was inappropriate for a three-year-old child, illustrating the father’s lack of intention to communicate with the child and supporting the mother’s testimony that the father had, generally, played a small role in the child’s life. The inappropriate letters that the father sent to the child contained threats against the mother, profanity, references to violence and guns, derogatory words and sexually explicit language. The evidence further establishes that the only person willing to supervise correspondence or communication between the father and the child was the child’s paternal grandmother, with whom the child had no relationship. To the extent that the father’s testimony contradicted the aforementioned evidence, Family Court found “substantially all of his testimony to be false,” particularly emphasizing the father’s “patently false” assertion that he had no knowledge of the letters at issue. We defer to that credibility determination (see Matter of Benjamin v Lemasters, 125 AD3d 1144, 1146 [2015]). Given the father’s demonstrated willingness to make the child a witness to and tool of his efforts to bypass an order of protection in order to communicate with and threaten the mother, there is a sound and substantial basis in the record to support the conclusion that, under all of the circumstances, contact would be harmful to the child (see Matter of Brown v Terwilliger, 108 AD3d 1047, 1048 [2013], lv denied 22 NY3d 858 [2013]; Matter of Cole v Comfort, 63 AD3d 1234, 1236 [2009], lv denied 13 *1249 NY3d 706 [2009]; see generally Matter of Robert AA. v Colleen BB., 101 AD3d 1396, 1398 [2012], lv denied 20 NY3d 860 [2013]). Accordingly, we will not disturb Family Court’s determination.
Peters, P.J., Egan Jr., Rose and Mulvey, JJ., concur.
Ordered that the order is affirmed, without costs.

. The father’s earliest conditional release date is in November 2017, while his maximum incarceration term extends to November 2021.

. The father does not challenge Family Court’s finding that there was a change in circumstances warranting a review of the issues of custody and visitation to ensure the best interests of the child (see Matter of Raychelle J. v Kendell K., 121 AD3d 1206, 1207 [2014]).