Matter of Giovanni H.B. (Henry B.--Orissa B.) (2019 NY Slip Op 03680)





Matter of Giovanni H.B. (Henry B.--Orissa B.)


2019 NY Slip Op 03680


Decided on May 9, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 9, 2019

Friedman, J.P., Renwick, Kapnick, Kahn, Oing, JJ.


9273

[*1]In re Giovanni H.B., A Child Under Eighteen Years of Age, etc., Henry B., Respondent-Appellant, Administration for Children's Services, Petitioner-Respondent, Orissa B., Respondent-Respondent.


Andrew J. Baer, New York, for appellant.
Zachary W. Carter, Corporation Counsel, New York (Rebecca L. Visgaitis of counsel), for Administration for Children's Services, respondent.
Steven P. Forbes, Jamaica, for Orissa B., respondent.
John R. Eyerman, New York, attorney for the child.



Order, Family Court, Bronx County (Fiordaliza A. Rodriguez, J.), entered on or about April 10, 2018, which, to the extent appealed from as limited by the brief, after a hearing, upon respondent father's request for visitation with the subject child (Giovanni), denied visitation at the correctional facility in which respondent is incarcerated and granted visitation via letters to be kept by petitioner agency, unanimously affirmed, without costs.
Respondent is incarcerated at the Coxsackie Correctional Facility for the first-degree rape of his stepdaughter, Kayla, Giovanni's half-sister, in March 2014. Kayla was six years old at the time of the rape, and Giovanni, then approximately 18 months old, was in the home when the rape occurred. Respondent was sentenced to 12 years in prison, followed by 12 years of postrelease supervision, and a full stay-away order of protection through May 2034 was issued on Kayla's behalf.
Giovanni, who has not seen or spoken to his father since he was about two years old, has been diagnosed with autism spectrum disorder, and has cognitive and social deficits. Among other things, Giovanni becomes aggressive and defiant when there are changes to his routine. He has tantrums, tries to run away when taken out in public or on public transportation, is hyperactive, and suffers from anxiety.
Contrary to respondent's argument, the presumption that parental visitation is in the best interests of a child was overcome by the hearing evidence showing that visitation with respondent would not be in Giovanni's best interests (see Matter of Granger v Misercola, 21 NY3d 86, 90-91 [2013]). The evidence demonstrates that, in view of respondent's heinous crime, the impact that visitation would have on Kayla and, in turn, on the close sibling relationship Giovanni enjoys with her could cause
harm to Giovanni (see e.g. Matter of Enrique T. v Annamarie M., 15 AD3d 310 [1st Dept 2005]; Matter of Davis v Davis, 265 AD2d 552 [2d Dept 1999]; Matter of Rogowski v Rogowski, 251 AD2d 827 [3d Dept 1998]).
We reject respondent's efforts to cast as irrelevant the likely effect that his visitation with Giovanni would have on Kayla. Even respondent argues that visitation determinations are based [*2]on the totality of the circumstances. Given the apparent significance of Giovanni's relationship with Kayla, the court properly considered the inevitably adverse effect on that relationship that would result from Giovanni's developing a relationship with Kayla's rapist.
Respondent asserts that he has taken steps to insure Kayla's best interests in connection with the visitation. However, the evidence demonstrates that the visitation itself would be severely adverse to Kayla's best interests. Moreover, the court appropriately took into account that certain aspects of this difficult situation were unknown or unknowable at the time of the hearing, and made the responsible decision to revisit the issue every six months.
Respondent's efforts to minimize the gravity of the physical and emotional disruption that Giovanni would suffer in connection with traveling to and from the correctional facility show a lack of insight into Giovanni's special needs. Respondent's purported expertise comes from reading excerpts of the Merck Manual and pamphlets on autism. Respondent has not seen his son since Giovanni was a young toddler and, in contrast to the hearing witnesses, has no first-hand knowledge of the behavioral issues that Giovanni has manifested since that time. Accordingly, the court appropriately gave great weight to the other witnesses' testimony on this issue (see e.g. Matter of Grimes v Pignalosa-Grimes, 165 AD3d 796 [2d Dept 2018], lv denied 32 NY3d 914 [2019]; see also Matter of Toshea C.J., 62 AD3d 587 [1st Dept 2009]).
Respondent's arguments premised on petitioner's visitation policy are belied by the policy's recognition that visitation should occur only when it is "safe" and the policy's creation of an exception to visitation with incarcerated parents, even where the permanency goal is reunification, when visitation would "pose a risk to the child's physical or emotional safety" (see also Family Court Act § 1030[c]).
Respondent contends that the court erred in saying that visitation would be creating rather than rehabilitating his relationship with Giovanni, although he does not dispute that he has not seen Giovanni for years. While there was testimony that Giovanni was aware that he had a father, it was not clear that he understood that his father was respondent; moreover, witnesses testified that he never asked to see his father or inquired about his whereabouts. We reject respondent's attempt to blame the court system's delays for severing his relationship with Giovanni; it was, above all, his own, admitted criminal conduct that has precluded him from being involved in his son's life.
Respondent's arguments concerning letter visitation are also unavailing. The court did not actually deny letter visitation, but took the measured, reasonable approach of allowing respondent to continue to send letters that would be kept in agency files until more information from mental health professionals had been obtained. Nor was this an improper delegation of authority by the court. The order contemplates not that these professionals will decide whether respondent's correspondence should be read or given to Giovanni but that they will provide medical guidance to the court to enable it to decide the issue.
We have considered respondent's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 9, 2019
CLERK