Matter of Joseph F. v Stephanie G. (2020 NY Slip Op 01225)





Matter of Joseph F. v Stephanie G.


2020 NY Slip Op 01225


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

527938

[*1]In the Matter of Joseph F., Appellant,
v
Stephanie G., Respondent.

Calendar Date: January 15, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Colangelo, JJ.


Tracy Steeves, Kingston, for appellant.
Lindsay H. Kaplan, Kingston, for respondent.
Betty J. Potenza, Highland, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered October 29, 2018, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for an order of visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of a child (born in 2012). The father has been serving a 12-year prison sentence since 2012, when the mother was pregnant with the child. In 2016, shortly after the mother obtained a judgment of divorce, the father commenced this proceeding seeking visitation with the child. Following a fact-finding hearing and a Lincoln hearing, Family Court denied the father's request for in-prison visits, but ordered that the father was entitled to phone calls twice a month with the child and could correspond with the child by mail. The father appeals,[FN1] arguing that Family Court's determination to deny him visitation is not supported by a sound and substantial basis.[FN2]
It is presumed that visitation with a noncustodial parent, including an incarcerated one, is in the best interests of the child (see Matter of Granger v Misercola, 21 NY3d 86, 91 [2013]; Matter of Benjamin OO. v Latasha OO., 170 AD3d 1394, 1395 [2019], lv denied 33 NY3d 909 [2019]). This presumption, however, may be rebutted with proof demonstrating, by a preponderance of the evidence, that visitation with the incarcerated parent would, given the totality of circumstances, "be harmful to the child's welfare" or contrary to the child's best interests (Matter of Granger v Misercola, 21 NY3d at 91; see Matter of Kari CC. v Martin DD., 148 AD3d 1246, 1248 [2017]). The propriety of visitation is a matter committed to the sound discretion of Family Court, guided by the best interests of the child, and this Court will not disturb its determination if it is supported by a sound and substantial basis in the record (see Matter of Samuels v Samuels, 144 AD3d 1415, 1415-1416 [2016]; Matter of Kadio v Volino, 126 AD3d 1253, 1254 [2015]).
The hearing evidence established that the father has been incarcerated for the entirety of the child's life and will continue to be incarcerated until at least 2023. Although the mother regularly brought the child to visit the father in prison during the first few years of the child's life, the evidence credited by Family Court demonstrated that the father was often more concerned with the mother than the child during visits and that the father routinely directed vile, threatening and disrespectful comments and conduct toward the mother, both in and outside the presence of the child.[FN3] The mother testified that the prison visits were difficult for the child and that she would observe dramatic behavioral changes in the child in the weeks following the visits. The mother further testified that the father sent little to no written correspondence to the child during the first six years of the child's life.
In our view, the evidence amply supports Family Court's determination that prison visits would not be in the best interests of the child. The court reasonably concluded that the father "has done little to foster a relationship with his child" and that, because the father consistently used his contact with the child to either pursue a romantic relationship with the mother or to denigrate the mother, the father had created a situation in which the mother could not facilitate visits.[FN4] The evidence established that the only other person willing and able to facilitate visitation was the child's paternal grandmother — who had not had, or attempted to have, any contact with the child whatsoever in the two years preceding the fact-finding hearing. Considering that the paternal grandmother had no established relationship with the child, as well as the behavioral changes observed in the child after prison visits, Family Court reasonably concluded that prison visits facilitated by the paternal grandmother were not in the child's best interests. Given the totality of the evidence, we find Family Court's determination to deny the father prison visits with the child to be supported by a sound and substantial basis in the record, and we will not disturb it (see Matter of Kari CC. v Martin DD., 148 AD3d at 1248-1249; Matter of Joshua C. v Yolanda C., 140 AD3d 1213, 1214-1215 [2016]).
Lynch, J.P., Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: We exercise our discretion to treat the father's notice of appeal as valid despite its inaccurate description of the date of the order appealed from (see CPLR 5520 [c]).

Footnote 2: The parties' judgment of divorce, which was entered upon the father's consent, while he was acting pro se, did not provide the father with visitation. Significantly, the father consented to the terms of the judgment of divorce only after Supreme Court summarily rejected his request for visitation without having heard any evidence rebutting the presumption that visitation with the noncustodial parent, even an incarcerated one, is in the best interests of the child. Under these circumstances, the father was not required to demonstrate a change in circumstances (see Matter of Izquierdo v Santiago, 151 AD3d 967, 968-969 [2017]; Matter of Edick v Gagnon, 139 AD3d 1126, 1128 n [2016]; see generally S.L. v J.R., 27 NY3d 558, 563 [2016]).

Footnote 3: Such evidence included an extremely disturbing letter written by the father to the mother.

Footnote 4: As a result of a family offense petition brought by the mother against the father, Family Court entered an order of protection in favor of the mother, prohibiting the father from having any contact with the mother, except to the extent necessary to correspond with the child by mail and by phone at designated times.