Matter of Michael B. v Patricia S. (2024 NY Slip Op 06005)

Matter of Michael B. v Patricia S.

2024 NY Slip Op 06005

Decided on December 03, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 03, 2024

Before: Manzanet-Daniels, J.P., Gesmer, Shulman, Rodriguez, Michael, JJ. 

Docket No. V-19368-13/22 Appeal No. 3149 Case No. 2024-02680 

[*1]In the Matter of Michael B., Petitioner-Appellant,
v
Patricia S., Respondent-Respondent.

Law Office of Thomas R. Villecco, P.C., New York (Thomas R. Villecco of counsel), for appellant.
Bruce A. Young, New York, for respondent.
Janet Neustaetter, The Children's Law Center, Brooklyn (Rachel J. Stanton of counsel), for the child.

Order, Family Court, Bronx County (Tamara Schwarzman, Referee), entered on or about April 11, 2024, which, to the extent appealed from as limited by the briefs, granted respondent mother's petition to modify prior orders of visitation and directed the parties to agree on petitioner father's parenting time in writing, in consultation with the subject child, unanimously reversed, on the law, without costs and the matter remanded for further proceedings as necessary for issuance of a visitation order consistent with this order.
In 2017, the parties had agreed to a visitation schedule under which the father spent alternate weekends with the child. That pattern of visits became disrupted during the pandemic, causing the father to move for an order to enforce their visitation schedule. The mother then moved to modify the visitation order. It is undisputed that the parties do not communicate, the child has consistently declined visitation, and the mother will not consent to visitation against the child's wishes.
After trial, Family Court found that the father "displayed a lack of sensitivity and flexibility" when he insisted during the early days of the pandemic that the parties follow to the letter the visitation schedule in the order then in place. The court found that the father's "inflexibility and lack of empathy for the Mother and the Child's feelings at this time and his numerous calls to the authorities led to a further alienation between the Father and the Child, especially as she entered her teenage years."
Family court also found that, in October 2022, the father appeared at the child's school and insisted that she spend the weekend with him, even though she made it clear that she did not want to, and despite the fact that the child had not spent time with the father in more than a year and a half, except for a brief conversation in front of the mother's home in August 2020. Since the October 2022 visit, the child has been unwilling to have any contact with the father and has not been responsive to his calls to her on her cell phone. Family Court found that the October 2022 incident was "detrimental to the Child's well-being and stability."
However, while the record showed that the child was understandably upset immediately after the October 2022 visit, there was no evidence of what, if any, long-term damaging psychological effect that incident had on the child. Moreover, there was no expert testimony on this issue (Family Court Act § 251[A]; 22 NYCRR 202.18; see also Sinnott-Turner v Kolba, 60 AD3d 774, 776 [2d Dept 2009]), which might also have shed light on how and whether the father might better meet the child's emotional and developmental needs and repair their relationship going forward.
The mother supported the idea of the father and child each participating in counseling. She noted that the child had previously been in therapy and she was willing to enroll her again. The court credited the mother's testimony that she is willing [*2]to facilitate visitation between the child and the father and would not prevent contact if the child wanted it. Similarly, the father had previously been willing to participate in supervised or therapeutic visitation with the child, participated in the intake process, and attended appointments, although the child was not then willing to attend. We give deference to the court's credibility determinations (Matter of Calvin B. v Tikema M., 161 AD3d 521, 521-522 [1st Dept 2018]).
"A rebuttable presumption that a noncustodial parent will be granted visitation is an appropriate starting point in any initial determination regarding custody and/or visitation" (Matter of Granger v Misercola, 21 NY3d 86, 90-91 [2013]). "Visitation should be denied where it is demonstrated that under all the circumstances visitation would be harmful to the child's welfare, or that the right to visitation has been forfeited" (id. at 91). "[T]he sweeping denial of the right of the [non-custodial parent] to visit or see the child is a drastic decision that should be based upon substantial evidence" (id.).
We have consistently held that "[a] court may not delegate its authority to determine visitation to either a parent or a child . . . . A visitation provision that is conditioned on the desires of the children tends . . . to defeat the right of visitation" (William-Torand v Torand, 73 AD3d 605, 606 [1st Dept 2010] [internal quotation marks omitted]; see also Cornell S.J. v Altemease R.J., 164 AD3d 1184, 1185 [1st Dept 2018], lv denied 32 NY3d 913 [2019]). "While a child's views should be considered when determining issues of custody or visitation, they should not be determinative" (William-Torand, 73 AD3d at 606).
Here, Family Court's order that the father have visitation as agreed between the parties in consultation with the child is an impermissible delegation of its authority to the mother and child, and essentially causes the father to have no visitation at all. Furthermore, despite the father's lack of sensitivity to the child, particularly during the October 2022 incident, we cannot find on this record that there was a showing adequate to justify terminating the father's contact with the child; that is, that any form of contact under all circumstances would be harmful to the child's welfare.
We note that Family Court may order forensic mental health evaluations where a visitation petition is pending and where doing so will facilitate the court's determination (Family Court Act § 251[A]; 22 NYCRR 202.18). "[T]he value of forensic evaluations of the parents and children has long been recognized," including when a child refuses to visit with a parent (Sinnott-Turner, 60 AD3d at 776). We further note that a court may place restrictions on visitation that promote the child's best interests and are not unduly restrictive, including ordering therapeutic or other kinds of supervised visitation (Frank M. v Donna W., 44 AD3d 495 at 495 [1st Dept 2007]; Torres v Ojeda, 108 AD3d [*3]570, 571 [2d Dept 2013]; Sinnott-Turner, 60 AD3d at 776). The court may also make directives as to the amount and type of contact a parent has with the child between visits. Finally, a court may direct a parent to attend counseling as a component of a visitation plan, where doing so promotes the child's best interests (see Jamel W. v Stacey J., 136 AD3d 552, 553 [1st Dept 2016]; Torres v Ojeda, 108 AD3d at 571).
Consequently, we remand this matter so that Family Court can establish an appropriate order of visitation consistent with this decision on a schedule that is sensitive to the child's needs and includes provisions for the father's contact with the child by phone or in writing.
We have considered and rejected the father's remaining arguments.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 3, 2024