Matter of Z.V. (J.V.) (2025 NY Slip Op 50100(U))

[*1]

Matter of Z.V. (J.V.)

2025 NY Slip Op 50100(U)

Decided on January 28, 2025

Family Court, New York County

Wilkofsky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 28, 2025
Family Court, New York County

In the Matter of Z.V., 
 A Child Under Eighteen years of Age Alleged to be Neglected by J.V., Respondent.

Docket No. NN-xxxxx-24

Special Assistant Corporation Counsel Andrew Deckel, for the NYC Administration for Children's Services
Special Assistant Corporation Counsel Taris Rodney, for the NYC Administration for Children's Services
Christina Nevarez, Neighborhood Defender Service of Harlem, attorney for the respondent mother
Ryan Napoli, Neighborhood Defender Service of Harlem, attorney for the respondent mother
Marly Gonzalez, Lawyers for Children, attorney for subject child

Yael Wilkofsky, J.

On or about May 31, 2024, the petitioner Administration for Children's Services ("ACS") filed a Family Court Act ("FCA") Article 10 neglect petition on behalf of the subject child Z.V. (the "subject child") against the respondent J.V. (the "respondent father"). The respondent father now moves for an Order directing that a visitation assessment be conducted by S.N., LMSW, to assess what, if any, parental visitation or conduct is recommended between the respondent father and the subject child. For the reasons set forth below, the respondent father's motion is denied.
The petition alleges that the respondent father fails to provide the subject child with proper supervision and guardianship based on allegations of excessive corporal punishment. Specifically, the allegations in the petition are as follows. On or about May 22, 2024, the [*2]respondent father burst into the bathroom of their apartment and told the subject child, who was 12 years old at the time, to "square up." The respondent father then took the subject child's laptop and antagonized her to take the laptop back from him. When the subject child attempted to retrieve her laptop from the respondent father, he placed her into a chokehold with his arm around her neck. The subject child then went into the kitchen and the respondent father followed her, at which point the respondent father again placed her in a chokehold and wrestled her to the living room floor. The subject child reported that during the incident, she felt strangled and like she was about to die as she was struggling to breathe and could not feel oxygen. After the respondent father released the subject child from the chokehold, the subject child ran out of the apartment, went to her former school to report the incident, and refused to return to the respondent father's home. On or about May 23, 2024, a forensic interview was conducted at the Manhattan Child Advocacy Center ("CAC") during which the subject child disclosed that the respondent father had wrestled her to the floor prior to the May 22, 2024 incident and that he does so whenever she behaves badly in school or is disrespectful. At the CAC interview, the subject child was observed to have a quarter-sized brown bruise in the center of her right cheek, two-inch long red scratch marks on her right forearm and a red mark on her left forearm, which, the subject child reported, were caused by the respondent father during the May 22, 2024 incident. Thereafter, the subject child was brought to the hospital, received medical attention and was subsequently discharged.
On May 31, 2024, at intake on the neglect petition, the Court removed the subject child from the respondent father, finding that it would be contrary to the subject child's welfare to return home to the respondent father and that removal was necessary to avoid imminent risk to the subject child's life or health. The Court temporarily directly placed the subject child with her adult half-sister. The Court issued a full stay away temporary order of protection against the respondent father on behalf of the subject child except for agency supervised visitation, at the subject child's discretion. At a June 10, 2024 court appearance, the respondent father made an application for resource supervised visitation and family therapy. The subject child's counsel opposed the request on the grounds that there had not yet been any agency-supervised visits based on the subject child's steadfast refusal to visit with the respondent father, that she had not yet spoken to the subject child about expanding to resource-supervised visits and that based on the allegations in the petition, the respondent father should be engaged in his own services prior to beginning family therapy with the subject child. The Court issued an Order permitting the respondent father to have resource-supervised phone contact with the subject child, at the subject child's discretion, and reiterated that all in-person visitation was to be agency-supervised and at the subject child's discretion. At a court appearance on July 25, 2024, the Court again addressed visitation between the respondent father and the subject child. The Child Protective Specialist ("CPS") assigned to the case informed the Court that the subject child was reluctant to have in-person visitation with the respondent father, even if the visits were supervised, and that although the subject child loves her father, she was not yet ready to have virtual visits with him either as she was still working through her feelings about the respondent father's behavior toward her. At a court appearance on November 18, 2024, when discussing visitation, counsel for the subject child informed the Court that in October 2024, the subject child had a telephone visit with the respondent father that did not go well, specifically, that during the visit, the respondent father was crying to the subject child asking the subject child to return home and blaming the subject child's sister for things that the subject child felt were the respondent father's fault. Counsel for [*3]the subject child further reported that the subject child did not wish to have any visits with the respondent father, that she wanted to remain in her sister's care and that the subject child would like to engage in therapy. Counsel for the subject child also asserted that perhaps if the respondent father was engaged in his own therapeutic services, the subject child would be less reluctant to visit with him. Additionally, counsel for the subject child requested that the respondent father provide the subject child with all her personal belongings which had remained in his home since the case was filed. The Court ordered that the respondent father give the subject child all her personal belongings and that the petitioner assist in ensuring that the subject child obtain all her belongings from the respondent father's home. The Court also ensured that the petitioner was making a referral for individual therapy for the subject child.
The respondent father's motion for an Order directing that a visitation assessment be conducted by S.N., LMSW, to assess what, if any, parental visitation or conduct is recommended between the respondent father and the subject child, is denied as the Court finds that it is not in the subject child's best interests to undergo such an assessment. Initially, the Court finds that the visitation assessment that the respondent father seeks is akin to a forensic evaluation conducted in custody cases and is not appropriate in a neglect case such as this one. Moreover, even if such a visitation assessment were appropriate, the Court finds that there is no need for such an assessment, which would be intrusive and burdensome to the subject child, as the Court is in the best position, and has all the information it needs, to make the assessment about what type of visitation between the respondent father and the subject child is appropriate in this case.
Indeed, throughout this case, based on all the information before it, the Court has assessed the type of visitation that is in the subject child's best interests and permitted the respondent father to have supervised in-person visitation with the subject child only at the subject child's discretion based on such assessment. Pursuant to FCA 1030(a), "[a] respondent shall have the right to reasonable and regularly scheduled visitation with a child in the temporary custody of a social services official unless limited by an order of the family court." "[T]he presumption that parental visitation is in the best interests of a child [may be] overcome by evidence showing that visitation with respondent would not be in [the child's] best interests" (In re Giovanni H.B., 172 AD3d 489 [1st Dept 2019]).
Initially, the Court determined that visitation with the respondent father only at the subject child's discretion is in the subject child's best interests because the subject child, who is a mature and articulate 13 year-old, has been adamant that she does not want visits with her father. Indeed, the record reflects that the subject child did try to visit with her father but that the visit did not go well because the subject child felt that the respondent father did not take accountability for his actions.
However, the subject child's refusal to visit with the respondent father is not the only factor the Court considered in making such a determination, although it is certainly an important one. In addition, the Court based its determination on the respondent father's failure to demonstrate a commitment to ensuring that the subject child's needs are met and to complying with court orders. The subject child has reiterated, to the Court and to the respondent father, that prior to continuing any visitation with the respondent father, she would like to engage in therapy to work through trauma she has experienced. However, petitioner has made numerous requests, over a period of approximately six months, that the respondent father provide his medical insurance information so that the subject child may be referred for therapeutic services. However, despite these requests, the respondent father failed to provide the petitioner with active [*4]insurance information and thus, the subject child has not yet been referred for mental health services. Indeed, in her affirmation attached to the petitioner's opposition to the motion, CPS affirms that although the respondent father has provided some insurance information, and only after numerous requests were made, the information provided was inaccurate. Moreover, CPS affirms that she notified the respondent father that he had provided inaccurate insurance information and requested additional information, but that as of January 10, 2025, the respondent father has not been responsive or forthcoming with the correct insurance information. The Court notes that at argument on the motion on January 28, 2025, the petitioner informed the Court that the respondent father had just recently provided new medical insurance information, but that petitioner had not yet had an opportunity to check whether the insurance was active and whether the information was accurate.
Additionally, the Court based its determination on the respondent father's refusal to provide the subject child with her personal belongings, despite the Court's order that he do so. The subject child has repeatedly requested that the respondent father give her all her personal belongings, which have remained in the respondent father's home since the petition was filed in May 2024. Indeed, the Court ordered such relief on the record and ordered that the petitioner assist in ensuring that the subject child obtains her personal belongings from the respondent father's home. However, the respondent father has refused to give the subject child her personal belongings, allegedly because she was not agreeing to visitation. Moreover, when the petitioner reached out to the respondent father to coordinate the transfer of the subject child's personal belongings, the respondent father refused or was unresponsive. The Court notes that at argument on the motion on January 28, 2025, the petitioner informed the Court that the respondent father finally provided the subject child with her personal belongings, one week prior to argument on the motion, despite the fact that the subject child has been requesting those items since at least November 2024, if not earlier.
The respondent father's reliance at argument on a recent First Department case, Matter of Michael B. v Patricia S., 2024 NY Slip Op. 06005 (1st Dept 2024), is misplaced as that case is distinguishable. As an initial matter, Matter of Michael B. is a custody case and not a neglect case such as this one. Additionally, in that case, the First Department held that "[a] court may not delegate its authority to determine visitation to either a parent or a child" and that "[w]hile a child's views should be considered when determining issues of custody or visitation, they should not be determinative." Matter of Michael B. v Patricia S., 2024 NY Slip Op. 06005 at 2. Here, the Court has not delegated its authority to determine visitation to the subject child and is also declining to delegate its authority to a third-party social worker, despite the respondent's request.As the Court has explained, the Court, and the Court alone, has assessed what type of visitation is in the subject child's best interests at this time and has repeatedly explained to the respondent father that his behavior during the pendency of the neglect case plays a role in the Court's visitation assessment. Indeed, the Court continuously assesses and re-assesses the type of visitation that is in the subject child's best interests based on new information provided to the Court, and the respondent father has failed to offer a sufficient basis for this Court to delegate such assessment to a third-party social worker.
Based on the foregoing, the respondent father's motion for an Order directing that a visitation assessment be conducted by S.N., LMSW, to assess what, if any, parental visitation or conduct is recommended between the respondent father and the subject child, is denied. This constitutes the decision and order of the Court.
DATED: January 28, 2025
New York, NY
E N T E R:
Hon. Yael Wilkofsky, J.F.C.